PREDETEANU v FREUD, MARKUS, SLAVIN & MOUNTAIN

1. Evidence—Dead Man's Statute—Spouses—Contracts—Estates —Antagonistic Interest—Statutes.

   A spouse is competent to testify in support of a contractual claim brought by the other spouse against an estate; however, a direct interest antagonistic to the estate could disqualify such a spouse (MCLA 600.2166; MSA 27A.2166).

2. Evidence—Dead Man's Statute—Spouses—Estates—Antagonistic Interest—Corroborating Testimony—Appeal and Error —Statutes.

   A trial judge's finding that a plaintiff's husband had an interest antagonistic to an estate of a decedent the executor of which estate was the defendant in an action and that thereby the husband was disqualified under the dead man's statute from corroborating the plaintiff's testimony on matters equally within the knowledge of the deceased was not clearly erroneous where the finding was based on the record which showed the husband's financial and personal involvement in the transaction which was the basis of the lawsuit (MCLA 600.2166; MSA 27A.2166).

3. Appeal and Error—Evidence—Dead Man's Statute—Clear Error—Estates—Agents—Corporations—Statutes.

   A trial judge's finding that the agents of a corporation, operated by a plaintiff, were agents of the plaintiff for purposes of evaluating offered testimony under the dead man's statute was not clearly erroneous where the plaintiff's own testimony revealed that the plaintiff did not maintain the separate identities of the corporation and herself (MCLA 600.2166; MSA 27A.2166).

Appeal from Wayne, Benjamin D. Burdick, J. Submitted June 23, 1977, at Detroit. (Docket No. 31452.) Decided October 25, 1977.

References for Points in Headnotes
[1, 2] 81 Am Jur 2d, Witnesses § 400.
[3] 81 Am Jur 2d, Witnesses § 401.

Complaint by Magdalena E. Predeteanu against Freud, Markus, Slavin & Mountain, a dissolved Michigan partnership consisting of Harold E. Mountain, deceased, and John Slavin, and against Freud, Markus, Slavin & Mountain, P. C., a professional corporation in the practice of law, and against John M. Rady, executor of the estate of Harold E. Mountain, deceased, for damages for malpractice in the practice of law. Judgment for defendants. Plaintiff appeals. Affirmed.

*Sommers, Schwartz, Silver, Schwartz & Tyler, P. C. (by John H. Shepherd),* for plaintiff.

*Sullivan, Ranger, Ward & Bone,* for defendant.

Before: BEASLEY, P. J., and V. J. BRENNAN and J. R. McDONALD,* JJ.

BEASLEY, P. J. This case involves the application of the dead man's statute.[1] Plaintiff, the owner of a travel agency, retained Harold E. Mountain, a member of defendant law firm and now deceased, to represent her in selling her business. Apparently, she furnished the purchaser a false financial statement. However, she insists that she told her lawyer the financial statement was inaccurate and that he told her not to worry since it would not make any difference. She also claims that her lawyer told her that payment of the purchase price would be guaranteed by a third entity. Finally, she claims that she told the purchaser the financial statement was inaccurate.

The purchaser defaulted in payments and successfully sued plaintiff on the basis of the false financial statement she had furnished. While this

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 600.2166; MSA 27A.2166.

suit was in progress, and *after* Mountain had died, she started suit against Mountain's estate and the law firm in which he had been a partner, claiming malpractice.

Allegedly, her husband and two employees of her travel agency would testify on her behalf. In an effort to expedite trial, the parties agreed that plaintiff would make an offer of proof on a separate record after which the trial judge would rule as to application of the amended dead man's statute.

The separate record contains the testimony of plaintiff and her husband. That testimony revealed that the husband had received substantial financial assistance from plaintiff, that the husband had recommended Mr. Mountain to his wife, and that the husband had been involved in the sales transaction. In addition, the opinion of the trial court indicates that the proceeds of the sale, as they had been received, had been deposited in a joint bank account bearing the names of plaintiff, her mother and her husband. After hearing the testimony on the separate record, the trial judge ruled that the husband "clearly has an interest in the present case which is antagonistic to that of the deceased party's estate making the husband an opposite party under the Statute". The judge, therefore, ruled that the husband's testimony did not qualify as material evidence tending to corroborate plaintiff's testimony.

Plaintiff's offer of the testimony of her corporate employees was met by a similar ruling. The trial judge made a finding that, although the corporation was nominally a separate entity, still plaintiff's total control of the corporation was such that its employees were, in fact, her own agents for purposes of the dead man's statute. The em-

ployees' testimony, thus, would be subject to the same restrictions as the plaintiff's and could not be used to supply the necessary corroboration. In addition, the trial court ruled that the employees' testimony would also be precluded because it was hearsay.

Since the husband's testimony and the employees' testimony were all that plaintiff offered to corroborate her testimony, and since none of the offered testimony qualified as material evidence so tending to corroborate her testimony, the trial court ruled that the plaintiff's testimony was inadmissible because of the dead man's statute. The parties and the court recognized that this ruling would have the effect of a summary judgment for defendants, and this appeal followed.

The issue now on appeal is whether the trial court correctly ruled that neither the husband's testimony nor the offered agents' testimony qualified as material evidence corroborating the plaintiff's testimony for purposes of the dead man's statute. For the following reasons, we affirm the trial court's ruling.

The husband's testimony will be considered first. In Michigan, a spouse is competent to testify in support of a contractual claim, brought by the other spouse, against an estate.[2] However, as noted by the trial court, a direct interest, antagonistic to the estate, could disqualify such a spouse.[3] Here, the trial court found that plaintiff's husband did have an interest antagonistic to the estate; that finding was based upon the financial and personal involvement of the husband in the transaction. Even under the close examination urged by appel-

---

[2] *Slack v Norton,* 111 Mich 213; 69 NW 497 (1896).

[3] *Beaupre v Holzbaugh,* 327 Mich 101; 41 NW2d 338 (1950), *Seeber v Citizens State Bank of Sturgis,* 7 Mich App 33; 151 NW2d 222 (1967).

lant, that finding, on this record, is not clearly erroneous.[4]

The offered testimony of the two travel agency employees was the other presented source of evidence to corroborate plaintiff's testimony. The substance of the offered testimony was that the plaintiff, while not in the presence of defendant, told the employees that the financial statements were not accurate. This was said to tend to corroborate plaintiff's testimony in that, if plaintiff openly acknowledged the inaccuracy, it was unlikely that she had made contrary representations to her attorney, the defendant. Defendant's first objection to this testimony was that the employees, although in name agents of the travel agency corporation, were, in fact, plaintiff's own agents because of her total control of the corporation. The trial court's ruling adopted defendant's position and excluded the offered testimony.

The trial court noted that the testimony of plaintiff and her husband did not provide much information concerning the employees and their duties regarding the corporation. However, the trial court did have before it testimony concerning plaintiff's relationship to the corporation. For example, plaintiff had difficulty testifying as to her exact salary because:

"1969, I worked only until August, but that's when I sold the agency, and I just can't remember how much, because the reason why *I used to draw money as I needed it and not as a salary set up.* So, therefore, this is why it's so terribly hard for me to tell you how much I made, and * * * ." (Emphasis added.)

---

[4] Appellant distinguishes between the husband's interest, if any, in the original sale and his interest, if any, in the suit against Mr. Mountain's estate. On the facts of this case, our holding would be the same even if this distinction is accepted.

Some evidence was introduced showing that the intermingling of corporate and personal affairs extended to areas besides salary; in particular, travel and entertainment expenses for both plaintiff and her husband were treated in the same casual manner that the salary was.

After reviewing all the evidence, the trial judge ruled, in effect, that, to an outsider, the plaintiff did not maintain the separate identities of the corporation and herself. Therefore, in his words, the trial judge "pierced the corporate veil" and treated the corporation's agents as plaintiff's own agents.

We have also reviewed the evidence and tested the trial court's findings under the closer scrutiny appropriate to such nonjury determinations.[5] As is evident from the parties' positions, the evidence is not clear cut, and it is subject to different interpretations. In addition, we are especially sensitive to the general purpose of the dead man's statute to prevent fraud against estates and to the general proposition that courts will not allow the separate corporate identity to be used to further fraud or injustice.[6]

Here, we are not left with a definite and firm conviction that a mistake has been committed. Therefore, we hold that the trial judge was not clearly in error when he found that the agents of the corporation, on these facts, were agents of the plaintiff for purposes of evaluating offered testimony under the dead man's statute.[7]

Given our holding regarding the testimony of

[5] *Tuttle v Department of State Highways,* 397 Mich 44; 243 NW2d 244 (1976).

[6] *See,* 1 Fletcher, Cyclopedia Corporations, § 45, pp 252–263.

[7] In so holding, we do not decide whether the facts would justify disregarding, for all purposes, the separate identities of plaintiff and her corporation.

the corporation's agents, it is unnecessary to decide whether that testimony also was inadmissible hearsay.

Affirmed, with costs to appellees.