FASSIHI v SOMMERS, SCHWARTZ, SILVER, SCHWARTZ &
TYLER, PC

Docket Nos. 46038, 46039. Submitted February 3, 1981, at Detroit.—
Decided July 7, 1981.

Mahmood Fassihi brought an action in Wayne Circuit Court
against Sommers, Schwartz, Silver, Schwartz & Tyler, P.C. In
his complaint, plaintiff averred that he was a 50% shareholder,
officer and director of Livonia Physicians X-Ray, P.C., a profes-
sional medical corporation, and alleged breach of the attorney-
client relationship, breach of fiduciary, legal and ethical duties,
fraud and legal malpractice. He sought relief under GCR 1963,
908. Defendant moved for summary judgment and plaintiff
moved for an order compelling discovery. Both motions were
denied, Joseph G. Rashid, J., and both parties appeal by leave
granted. The appeals were consolidated by the Court of Ap-
peals. *Held:*

1. An attorney for a corporation does not have an attorney-
client relationship with the corporation's shareholders. Defen-
dant did not have an attorney-client relationship with plaintiff,
and plaintiff is not entitled to relief under GCR 1963, 908.

2. A fiduciary relationship exists when there is a reposing of
faith, confidence and trust, and the placing of reliance by one
upon the judgment and advice of another. The elements of
fraudulent misrepresentation are 1) a false representation by
the defendant, 2) knowledge or belief on the part of the defen-
dant that the representation is false, 3) an intention to induce
the plaintiff to act or to refrain from acting in reliance upon
the misrepresentation, 4) justifiable reliance upon the misrepre-
sentation on the part of the plaintiff, and 5) damage to the

REFERENCES FOR POINTS IN HEADNOTES
[1] 18, 19 Am Jur 2d, Corporations §§ 484, 1057.
Propriety of an attorney who has represented corporation acting for
corporation in controversy with officer, director, or stockholder. 1
ALR4th 1124.
[2] 37 Am Jur 2d, Fraud and Deceit §§ 15, 16, 441, 442.
[3] 37 Am Jur 2d, Fraud and Deceit §§ 12, 17.
[4] 18 Am Jur 2d, Corporations §§ 1149, 1156.
[5] 81 Am Jur 2d, Witnesses § 211.

plaintiff resulting from such reliance. The false material representation needed to establish fraud may be satisfied by the failure to divulge facts the defendant has a duty to disclose. Plaintiff did plead a cause of action for breach of fiduciary duty and fraudulent concealment.

3. All members of a corporation's board of directors, as members of the corporate control group, are entitled to information garnered by the corporation's attorney while representing the corporation. Plaintiff is entitled to his discovery order.

Affirmed in part, reversed in part and remanded with instructions.

1. ATTORNEY AND CLIENT — CORPORATIONS.

An attorney employed by a corporation has an attorney-client relationship with the corporation and not its shareholder.

2. EQUITY — FIDUCIARIES.

A fiduciary relationship exists where there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of another; relief will be granted when such position of influence has been acquired and abused, when confidence has been reposed and betrayed; the origin of the confidence and source of the influence are immaterial.

3. FRAUD — FRAUDULENT MISREPRESENTATION.

The elements of fraudulent misrepresentation are 1) a false representation by the defendant, 2) knowledge or belief on the part of the defendant that the representation is false, 3) an intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation, 4) justifiable reliance upon the misrepresentation on the part of the plaintiff, and 5) damage to the plaintiff resulting from such reliance; the false material representation needed to establish fraud may be satisfied by the failure to divulge facts the defendant has a duty to disclose.

4. ATTORNEY AND CLIENT — CORPORATIONS — BOARDS OF DIRECTORS.

All members of a corporation's board of directors, as members of the corporate control group, are entitled to information garnered by the corporation's attorney while representing the corporation.

5. ATTORNEY AND CLIENT — PRIVILEGE — FRAUD.

The attorney-client privilege does not protect communications made for the purpose of perpetrating a fraud.

*Bushnell, Gage, Doctoroff, Reizen & Byington* (by *David D. Kohl*), for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Thomas M. O'Leary* and *Christine D. Oldani*), for defendant.

Before: BRONSON, P.J., and M. F. CAVANAGH and N. J. KAUFMAN, JJ.

PER CURIAM. On February 22, 1977, plaintiff filed a verified complaint and sought relief under the authority of GCR 1963, 908. In his complaint, plaintiff asserted that he was a 50% shareholder, officer, and director of Livonia Physicians X-Ray, P.C., a professional medical corporation. The various allegations included breach of the attorney-client relationship, breach of fiduciary, legal, and ethical duties, fraud, and legal malpractice. Defendant filed a motion for summary judgment on the basis that GCR 1963, 908 did not apply to this case and no attorney-client relationship existed with plaintiff. This motion was denied on August 17, 1977.

Following the trial court's order denying defendant's motion for summary judgment, plaintiff deposed attorney Donald Epstein. However, during the deposition Epstein repeatedly refused to answer questions, claiming an attorney-client privilege. Plaintiff moved for an order compelling discovery, but the trial court denied the motion by order dated June 11, 1979. This order also extended to both parties the opportunity to take an interlocutory appeal from the denial of their respective motion.

This Court granted leave to take the interlocutory appeals by orders dated January 8, 1980. One

of these orders consolidated the appeals for hearing and decision.

The following factual recitation comes from plaintiff's complaint and the statement of facts appearing in his brief. Since we are obligated to consider the facts in the light most favorable to the nonmoving party when passing on a motion for summary judgment pursuant to GCR 1963, 117.2(1),[1] we are hereinafter setting forth this favorable picture.

In the summer of 1973, plaintiff, a radiologist practicing medicine in Ohio, was asked by Dr. Rudolfo Lopez to come to Michigan and join him in the practice of radiology at St. Mary's Hospital in Livonia. In August, 1973, the doctors formed a professional corporation known as Livonia Physicians X-Ray. Each doctor owned 50% of the stock, was an employee of the corporation, and received an identical salary. Plaintiff contends that the bylaws adopted by the two shareholders made each of them a member of the Board of Directors and that the two of them constituted the entirety of the board. Dr. Lopez was president of the corporation, and Dr. Fassihi was the secretary-treasurer.

Shortly after the corporation was organized, plaintiff sought and obtained medical staff privileges at St. Mary's. For a period of approximately 18 months, the doctors practiced together at the hospital in the radiology department.

Sometime on or before June 4, 1975, Dr. Lopez decided that he no longer desired to be associated with plaintiff. Consequently, Lopez requested that the attorney for the professional corporation, the defendant, ascertain how plaintiff could be ousted from Livonia Physicians X-Ray.

---

[1] *Staffney v Fireman's Fund Ins Co,* 91 Mich App 745, 751; 284 NW2d 277 (1979), and cases cited therein.

On or about June 6, 1975, defendant's agent, Donald Epstein, Esquire, personally delivered to plaintiff a letter dated June 4, 1975, purporting to terminate his interest in the professional corporation. The letter stated that this termination followed a meeting of the board of directors.[2] Plaintiff denies that any such meeting ever occurred. On June 9, 1975, plaintiff went to St. Mary's to perform his duties as a staff radiologist. At this time officials at the hospital told him that, due to his "termination" from the professional corporation, he was no longer eligible to practice at St. Mary's.

Dr. Lopez had an agreement with St. Mary's Hospital prior to plaintiff's association with Livonia Physicians X-Ray giving him personal and sole responsibility for staffing the radiology department. This agreement necessitated membership in Livonia Physicians X-Ray, P.C.

Defendant was responsible for drafting all the agreements pertaining to membership in the professional corporation. Defendant, and specifically Donald Epstein, had knowledge of the arrangements between Dr. Lopez and the hospital but never disclosed these facts to plaintiff. Plaintiff finally states that defendant has represented both Lopez individually and the professional corporation without disclosing to him this dual representation.

---

[2] Whether or not the by-laws of the professional corporation made Drs. Fassihi and Lopez the sole directors of the organization, Donald Epstein in a deposition contended that a Joseph Carolan was a third director. Mr. Carolan was apparently the business manager of Livonia Physicians X-Ray. We assume that at least defendant considers him a proper director. Otherwise, it would have been impossible for Lopez to effect his scheme of terminating Fassihi's association with the professional corporation as Fassihi would have undoubtedly opposed the plan. In any case, a corporate arrangement whereby one 50% shareholder can oust the other 50% shareholder—whether individually or with the assistance of a third director—seems highly unusual and comes to us on a stipulated hypothetical for purposes of this appeal.

This case presents us with the difficult question of what duties, if any, an attorney representing a closely held corporation has to a 50% owner of the entity, individually.[3] This is a problem of first impression in Michigan.

We start our analysis by examining whether an attorney-client relationship exists between plaintiff and defendant. If no such relationship exists, plaintiff's invocation of GCR 1963, 908 as the jurisdictional basis of the suit must fail, and, at a minimum, plaintiff will have to amend his complaint.

A corporation exists as an entity apart from its shareholders, even where the corporation has but one shareholder. *Bourne v Muskegon Circuit Judge,* 327 Mich 175, 191; 41 NW2d 515 (1950), *Elliott v Smith,* 47 Mich App 236, 241; 209 NW2d 425 (1973), *lv den* 390 Mich 767 (1973). While no Michigan case has addressed whether a corporation's attorney has an attorney-client relationship with the entity's shareholders, the general proposition of corporate identity apart from its shareholders leads us to conclude, in accordance with decisions from other jurisdictions, that the attorney's client is the corporation and not the shareholders. See, for instance, *US Industries, Inc v Goldman,* 421 F Supp 7, 11 (SD NY, 1976), *Stratton Group, Ltd v Sprayregen,* 466 F Supp 1180, 1184, fn 3 (SD NY, 1979), *Fanchon & Marco, Inc v Leahy,* 351 Mo 428, 456; 173 SW2d 417, 433 (1943).

Although we conclude that no attorney-client relationship exists between plaintiff and defendant, this does not necessarily mean that defendant had no fiduciary duty to plaintiff.[4] The exis-

---

[3] See Greenhouse, *In Corporate Law, Who's the Client?, The New York Times* (February 15, 1981), p 20E.

[4] If any fiduciary duty does exist, however, the jurisdiction of the court cannot rest on GCR 1963, 908.

tence of an attorney-client relationship merely establishes a per se rule that the lawyer owes fiduciary duties to the client.

A fiduciary relationship arises when one reposes faith, confidence, and trust in another's judgment and advice. Where a confidence has been betrayed by the party in the position of influence, this betrayal is actionable, and the origin of the confidence is immaterial. *Smith v Saginaw Savings & Loan Ass'n,* 94 Mich App 263, 274; 288 NW2d 613 (1979). Furthermore, whether there exists a confidential relationship apart from a well defined fiduciary category is a question of fact. See *In re Wood Estate,* 374 Mich 278; 132 NW2d 35 (1965). Based upon the pleadings, we cannot say that plaintiff's claim is clearly unenforceable as a matter of law.

Plaintiff asserts that he reposed in defendant his trust and confidence and believed that, as a 50% shareholder in Livonia Physicians X-Ray, defendant would treat him with the same degree of loyalty and impartiality extended to the other shareholder, Dr. Lopez. In his complaint plaintiff states that he was betrayed in this respect. Specifically, plaintiffs asserts that he was not advised of defendant's dual representation of the corporate entity and Dr. Lopez personally.[5] Plaintiff also alleges that he was never informed of the contract between Lopez and St. Mary's which gave Lopez sole responsibility in the staffing of the radiology department and, more importantly, the defendant actively participated with Lopez in terminating plaintiff's association with the corporation and using the Lopez-St. Mary's contract to his detriment.

---

[5] The Code of Professional Responsibility and Canons, DR 5-105 requires full disclosure of dual representation of parties to the clients involved and forbids dual representation in some circumstances.

In support of his position that he has an attorney-client relationship with defendant, plaintiff cites a number of cases standing for the proposition that the corporate veil will be pierced where the corporate identity is being used to further fraud or injustice. See *Paul v University Motor Sales Co,* 283 Mich 587, 601-602; 278 NW 714 (1938), *Predeteanu v Freud, Markus, Salvin & Mountain,* 79 Mich App 340, 345; 261 NW2d 317 (1977). These cases are not factually similar to the instant matter as they involve claims against a corporate principal attempting to protect himself from personal liability through the corporate entity. At the same time, these cases are instructive as they point out the difficulties in treating a closely held corporation with few shareholders as an entity distinct from the shareholders. Instances in which the corporation attorneys stand in a fiduciary relationship to individual shareholders are obviously more likely to arise where the number of shareholders is small. In such cases it is not really a matter of the courts' piercing the corporate entity. Instead, the corporate attorneys, because of their close interaction with a shareholder or shareholders, simply stand in confidential relationships in respect to both the corporation and individual shareholders.[6]

In addition to the claim for breach of fiduciary duties, plaintiff contends that his complaint states a cause of action for fraud. The elements of fraud

---

[6] Although factually different, *Prescott v Coppage,* 266 Md 562; 296 A2d 150 (1972) is illuminating in its discussion of an attorney's obligations to third parties apart from a specific attorney-client relationship. In *Prescott,* the Maryland court found that the attorney owed a duty to a preferred creditor on a third-party beneficiary theory. The question in any given case is whether, irrespective of an actual attorney-client relationship, plaintiff has pled sufficient allegations tending to show some legal duty on the part of the attorney to him personally.

are: (1) a material representation which is false; (2) known by defendant to be false, or made recklessly without knowledge of its truth or falsity; (3) that defendant intended plaintiff to rely upon the representation; (4) that, in fact, plaintiff acted in reliance upon it; and (5) thereby suffered injury. *Hyma v Lee,* 338 Mich 31, 37; 60 NW2d 920 (1953), *Cormack v American Underwriters Corp,* 94 Mich App 379, 385; 288 NW2d 634 (1979). The false material representation needed to establish fraud may be satisfied by the failure to divulge a fact or facts the defendant has a duty to disclose. An action based on the failure to disclose facts is one for fraudulent concealment. *Wolfe v A E Kusterer & Co,* 269 Mich 424, 427-428; 257 NW2d 729 (1934).

Plaintiff's fraudulent concealment claim is premised on defendant's failure to divulge its dual representation of Livonia Physicians X-Ray and the failure of defendant to disclose the existence of the contract between Dr. Lopez and St. Mary's Hospital. We agree with plaintiff that, irrespective of any other duty, defendant would have an obligation to divulge its dual representation of the corporation and Dr. Lopez individually. The failure to divulge this fact might serve as the basis for a fraudulent concealment action. We cannot agree, however, that defendant had an obligation to divulge the existence or contents of the Lopez-St. Mary's Hospital contract to plaintiff. Defendant's knowledge of this contract arose out of a confidential attorney-client relationship between them and Dr. Lopez.[7] This attorney-client relationship prohibited defendant from divulging facts learned during the course of representation of Dr. Lopez

---

[7] This is not to say that Dr. Lopez's personal failure to divulge the existence of his contract with St. Mary's Hospital could not serve as the basis for a fraudulent concealment claim.

unless Lopez waived his right to the attorney-client privilege. While defendant should have, and likely did, consider the effect that its relationship with Lopez might have on the representation of the corporation and incidentally plaintiff, as a 50% shareholder, officer, and director, it was not prohibited from representing both if its employees' independent professional judgment on behalf of either would not likely be adversely affected by representation of the other. Code of Professional Responsibility and Canons, DR 5-105(C).[8]

Plaintiff's complaint does state a cause of action, albeit not pursuant to GCR 1963, 908. Despite the technical defect in the complaint, we affirm the trial court's order denying summary judgment. However, plaintiff must amend his complaint in accordance with the dictates of this opinion within 20 days of its receipt. By this opinion we grant plaintiff leave to amend pursuant to GCR 1963, 118.1. Failure to amend will result in the dismissal of this case.

We now turn to the issue of whether defendant has a privilege to refuse to answer questions relative to communications concerning the ouster of plaintiff from the corporation. Defendant contends that these communications are privileged because they were made on behalf of the majority of the board of directors and the attorney-client privilege belongs to the control group.

We hold that under defendant's own argument,

---

[8] To the extent the complaint alleges that defendants conspired with Dr. Lopez after plaintiff became a 50% shareholder of the corporation to use the Lopez-St. Mary's agreement to deprive him of the business opportunity he thought he had obtained, a cause of action is stated for breach of a fiduciary duty. It is not the failure to divulge the existence of the Lopez-St. Mary's Hospital contract in the first instance which is the basis of the action, however. The cause of action arises because of defendant's fiduciary duty to plaintiff and breach of this duty by covertly colluding with Dr. Lopez to deprive plaintiff of the business opportunity.

the attorney-client privilege may not be asserted against plaintiff. As a member of the board of directors, plaintiff was a member of the corporate control group. See *Diversified Industries, Inc v Meredith,* 572 F2d 596 (CA 8, 1977). Thus, with respect to any communications defendant had with Dr. Lopez while representing the corporation, as opposed to Lopez personally, plaintiff, as a member of the control group, is equally entitled to this information.

Additionally, defendant acknowledges that the attorney-client privilege does not protect communications made for the purpose of perpetrating a fraud. See *Garner v Wolfinbarger,* 430 F2d 1093 (CA 5, 1970). Although plaintiff's complaint does not use the magic word "fraud", the gist of his complaint rests on a species of fraud. Plaintiff asserts that defendant, while under the guise of representing the corporation, conspired to withhold information from him which he had a right to have as a 50% shareholder and member of the board of directors and to wrongfully deprive him of the benefits of a business opportunity. These allegations were sufficient to defeat the invocation of the attorney-client relationship pursuant to the fraud exception.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.[9] Plaintiff may tax costs.

---

[9] By this opinion we do not want to be understood as making any comment on how this litigation should ultimately come out.