64 F.3d 663
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward MUGLIA, Plaintiff/Counterdefendant-Appellee,
v.
KAUMAGRAPH CORPORATION, Defendant/Counterplaintiff-Appellant.
 Nos. 93-1986, 94-1156.
 United States Court of Appeals, Sixth Circuit.
 Aug. 16, 1995.
 
 Before: MERRITT, Chief Judge; BATCHELDER, Circuit Judge; and BERTELSMAN, Chief District Judge.[1]
 MERRITT, Chief Judge.
 
 
 1
 This appeal concerns Kaumagraph Corporation's ("Kaumagraph's") counterclaim for relief against Edward Muglia for breach of a duty to disclose certain business information. Kaumagraph seeks forfeiture of all commissions earned by Mr. Muglia after the breach and to offset this amount against commissions already found to be owed to Mr. Muglia and not at issue here. The District Court held that Kaumagraph must pay Mr. Muglia all commissions accrued within 60 days of his termination as well as prejudgment interest on that and other amounts owed. For the reasons set forth below, we affirm the holdings of the District Court.
 
 
 2
 This case comes before this Court from two consolidated appeals. The procedural history and facts are somewhat lengthy and will be briefly reiterated here only to the extent necessary to understand the limited issues before this Court.
 
 
 3
 Kaumagraph is a Delaware company that provides instrument panel components, referred to as decals, appliques and filters, for trucks and cars. AC Spark Plug Division ("AC"), located in Flint, Michigan, is the division of General Motors responsible for subcontracting with vendors such as Kaumagraph for the manufacture of these components. In 1981, AC was doing a limited amount of business with Kaumagraph and suggested to Kaumagraph that it hire a representative based in Flint to facilitate business between Kaumagraph and AC. An employee of AC recommended to Kaumagraph that Kaumagraph hire Edward Muglia. At that time, Mr. Muglia was representing several other manufacturers in their business dealings with AC.
 
 
 4
 Kaumagraph and Mr. Muglia entered into a Sales Agency Agreement on January 28, 1982 whereby Mr. Muglia was to be the exclusive sales agent for certain identified products. (J.A. at 100)[2] Mr. Muglia's "territory" was exclusively AC. Id. The original sales agreement was for a term of one year with each party reserving the right to terminate without cause with 60 days' notice or, in the case of Kaumagraph, immediately for cause. Sales Agreement at 4, J.A. at 103. The original commission rate was set relatively high (10% of the value of parts sold to AC) to compensate Mr. Muglia for low volumes of sales in the beginning of his tenure.
 
 
 5
 By 1983, sales by Kaumagraph to AC had increased to well over one million dollars from only about $20,000 in 1981. Due to the increase in sales volume, in early 1984 Kaumagraph began attempts to renegotiate Mr. Muglia's commission rate down to 7.5% for certain products and to fix the absolute value of commissions on other products. In addition, the term of the contract was increased from one year to three years. After several months of negotiations, the parties agreed to these terms by a signed amendment dated May 22, 1984 to the original Sales Agency Agreement. J.A. at 113-14.
 
 
 6
 In October 1984, Kaumagraph was awarded contracts to produce all the required instrument panel components for four different lines of GM vehicles. These awards ultimately resulted in $30 million worth of business to Kaumagraph and lucrative commissions for Mr. Muglia. District Court Opinion at 3-4. Due to the high level of compensation Mr. Muglia was receiving, Kaumagraph again attempted to renegotiate Mr. Muglia's commission rates in late 1984. Mr. Muglia resisted these attempts and Kaumagraph terminated its relationship with Mr. Muglia in June 1986. At the same time, Mr. Muglia sued Kaumagraph for breach of contract for failure to pay commissions and for wrongful termination in an effort to avoid payment of commissions, including commissions for the "life of the part."[3] In November 1986, Kaumagraph countersued, bringing various tort, contract and federal statutory claims.
 
 
 7
 The district court bifurcated the issues and ordered the parties to try the contract issues only, reserving any findings on damages, before a magistrate judge. Bifurcation Order filed April 20, 1984 (J.A. at 161-62). A trial was held in 1987 before the magistrate judge that resulted in dismissal of several of Mr. Muglia's contractual claims and reduced the time frame under which Mr. Muglia could receive commissions. Report and Recommendation dated June 15, 1988 (J.A. at 181); District Court Order accepting Report on April 25, 1989. (J.A. at 217) As directed by the District Court, damages were not assessed at that time.
 
 
 8
 The only issue before us from this first trial concerns a statement made by Mr. Muglia during the trial before the magistrate judge. Mr. Muglia testified that while he was negotiating his new commission rate in early 1984, he was aware that Kaumagraph would be receiving contracts from AC to produce all the panels for four of GM's new vehicle lines. This statement resulted in Kaumagraph amending its counterclaim after the first trial to include a claim that Mr. Muglia deliberately withheld this information from Kaumagraph. The exact nature of this claim is in dispute, but it is clear that the claim alleges that Mr. Muglia committed a breach of duty to Kaumagraph by his failure to disclose this information. In essence, Kaumagraph contends that Mr. Muglia withheld the information because he knew that the contracts would result in a significant increase in the volume of Kaumagraph's business from AC and that based on this increased sales volume the company would seek to lower his commission rate below the 7.5% that the two parties were negotiating at the time. Kaumagraph alleged injury resulting from Mr. Muglia's failure to disclose the information.
 
 
 9
 A second trial was held before Judge Newblatt on this claim and the other remaining counterclaims brought by Kaumagraph. At this second trial evidence was presented that AC had generated an internal memorandum dated May 1, 1984 that "summarized [AC's] review of all the suppliers of appliques for the instrument panel clusters and rated the suppliers' abilities to meet AC's requirements ...." August 17, 1992 Opinion at 11-12 (J.A. at 63-64). The memorandum indicated that Kaumagraph was ranked number one for providing some of the parts and was listed as the only supplier capable of meeting AC's quality criteria. Testimony was also presented that a representative of AC told Mr. Muglia in the spring of 1984 that Kaumagraph had a "lock" on the award of the four programs.[4]
 
 
 10
 The question before the court below was when this information became available to Mr. Muglia and whether he was under a duty to disclose it to Kaumagraph as soon as he learned it. Mr. Muglia denies that he had any definitive information about the awarding of the contracts prior to actual notification. Kaumagraph asserts that by withholding this information injury to the company was two-fold: (1) it would not have agreed to the 7.5% commission rate in the May 1984 amendment to its contract with Mr. Muglia and therefore consequently paid Mr. Muglia more than it otherwise would have and (2) it would have started preparing its facilities earlier for the contract awards and would not have wasted time on other projects that later prevented the company from fulfilling all the AC requirement contracts in a timely manner. Kaumagraph seeks to recover the commissions that exceed the reasonable commission rate to which Kaumagraph would have agreed had it been aware that increased sales volume was imminent and for the monetary losses it suffered through its inability to produce all the parts required under the contracts.
 
 
 11
 We review the District Court's factual findings for clear error and review legal conclusions de novo. Due to the very fact-intensive nature of this case, our scope of review is particularly narrow.
 
 Failure of the Duty to Disclose
 
 12
 The legal issues take some sorting out here. We must determine what claim Kaumagraph brought against Mr. Muglia and if that claim has been preserved for our review, what state's law should be applied in resolving the claim and finally we must resolve the merits of the claim as to Mr. Muglia's conduct.
 
 
 13
 A Claim for Breach of Fiduciary Duty Was Adequately Pled Below and Preserved for Review by this Court
 
 
 14
 Mr. Muglia claims that Kaumagraph did not plead or argue below that he breached a fiduciary duty and that the remedy of forfeiture of compensation for an agent's breach cannot be raised before this Court. Kaumagraph labeled its claim one for fraud, not one for breach of fiduciary duty. The facts as alleged in the counterclaim, however, could be construed to make a claim for breach of fiduciary duty. It appears as though the breach of fiduciary duty claim is subsumed within the general fraud claim because the liability is premised either on a breach of fiduciary duty or the breach of a duty to disclose, either of which can be used to prove a fraud claim. In making its fraud claim and alleging the necessary facts to support that claim, Mr. Muglia was on notice that Kaumagraph might try to frame the relationship as a fiduciary one and claim that the relationship was breached. It is certainly clear that Kaumagraph was alleging that the relationship between it and Mr. Muglia created a duty to disclose the information at issue here. Furthermore, it was not necessary for Kaumagraph to detail the exact remedy it sought where, as here, the District Court did not ask it to do so. This is particularly true where it was necessary for the District Court to exercise its equitable powers to fashion an appropriate remedy. As discussed further below, while we do not necessarily believe that a fiduciary relationship was created and the District Court did not so find, the issue of what duty Mr. Muglia owed to Kaumagraph was before the District Court and was properly preserved for review by this Court.
 
 Choice of Law
 
 15
 Neither the parties nor the District Court explain what state's law should be applied in determining the substantive claims at issue here. The law of numerous states is cited by both parties in their briefs. A federal court sitting in diversity, like the District Court below, must follow the conflict of laws rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); accord Tele-Save Merch. Co. v. Consumers Dist. Co., 814 F.2d 1120, 1122 (6th Cir. 1987). Because Michigan is the forum state, under Klaxon, an analysis of Michigan choice-of-law principles is required to determine what state's law should be applied to the breach of duty claim raised in this multi-state (Delaware and Michigan) conflict. The characterization of the claim as a contract claim, tort claim or equitable claim will affect the application of the choice-of-law rules. If the claim at issue here were a contract interpretation claim, a Michigan court would apply Delaware law as provided by the valid terms of the contract. However, the claim here is one seeking exercise of the court's equitable powers, and somewhat akin to a tort claim (for example, fraud). The Delaware law specified in the contract that would be applied to a contract interpretation claim is, therefore, not necessarily applicable. In the absence of state statutory directive as to choice-of-law principles, we turn to the factors recited in Restatement (Second) Conflict of Laws to determine what law to apply here. Under the Restatement, it appears that a Michigan court sitting in diversity should apply Michigan law in this case regardless of whether the claim is a tort claim or a claim arising in equity. See Restatement (Second) Conflict of Laws Secs. 6, 145. Michigan conflict law says to apply the law of the place of the injury. Because Michigan is the place of the injury, Michigan substantive law should be applied. It should be noted, however, that the law regarding this type of claim is not uniform within Michigan, or any other state's law that we have examined for that matter. This fact is probably due to the equitable nature of the claim and the reliance on the facts of each case to determine an equitable resolution. While we would rely on Michigan law to the best of our ability were we to find a conflict in the law, we did not find a conflict of any great import between the states. The case law of other states is helpful in a fact-based inquiry as we have here and we have taken into consideration the non-Michigan law cases cited by the parties.
 
 Merits of the Claim
 
 16
 The main issue on appeal here is whether the District Court erred by failing to find that Mr. Muglia forfeited all his commissions earned after the alleged breach of fiduciary duty. While not making an explicit finding that Mr. Muglia breached a fiduciary duty, the District Court implied that it believed it had the evidence to make such a finding. August 17, 1992 Opinion at 8 (J.A. at 60) ("A finding of breach would appear to be made easily ...."). We turn now to examining the duty Mr. Muglia owed Kaumagraph.
 
 
 17
 Under elemental principles of agency, an agent owes his principal a duty of good faith, loyalty and fair dealing. Restatement (Second) of Agency Sec. 387. Encompassed within these principles is the agent's duty to disclose information that is relevant to the affairs of the agency relationship. Furthermore, it is clear that an agent cannot profit at his principal's expense. Stephenson v. Golden, 279 Mich. 710, 736, 276 N.W. 849 (1937). Under Michigan law, an agent forfeits his right to compensation by misconduct, breach of duty or wilful disregard of the obligation imposed on him by the agency relationship. Sweeney & Moore, Inc. v. Chapman, 295 Mich. 360, 363, 294 N.W. 711, 712-13 (1940).
 
 
 18
 A fiduciary relationship arises when one reposes "faith, confidence and trust in another's judgment and advice." Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C., 107 Mich. App. 509, 515, 309 N.W.2d 645, 648 (1981). All agency relationships are not fiduciary ones. Except for certain per se fiduciary relationships, such as that between an attorney and client, fiduciary relationships arise from the facts and circumstances surrounding the relationship between the parties. Id. Unless circumstances indicate otherwise, the employer/employee relationship is generally not a fiduciary one. See, e.g., Bradley v. Gleason Works, 175 Mich. App. 459, 463, 438 N.W.2d 330, 332 (1989).
 
 
 19
 In determining what sort of legal duty existed in the relationship here and whether the failure to disclose certain business information breached that duty, we first examine the Sales Agency Agreement between Mr. Muglia and Kaumagraph. (J.A. at 100.) The contract explicitly stated that Mr. Muglia was an independent contractor and was an agent of Kaumagraph only for certain purposes:
 
 
 20
 Agent's [Mr. Muglia] actions under this agreement will be those of an independent contractor and nothing herein will be deemed to make Agent an agent of the Company and Agent will not make any representations to that effect. Agent will not accept orders, enter into contracts for sale or delivery of Products or make any other commitments on behalf of the Company, nor will Agent make any allowances or adjustments, or authorize the return of any Product without first receiving the Company's prior written approval with respect to each and every such allowance, adjustment or return.
 
 
 21
 Sales Agency Agreement at p 6 (J.A. at 102). On its face this contract does not indicate that the relationship was a fiduciary one. In fact, even the agency relationship is limited to certain activities and dealings between the parties. While the course of dealings between the parties may have formed a fiduciary relationship, the District Court did not reach that issue and we also find it unnecessary to do so here in order to resolve the issue of Mr. Muglia's duty to disclose certain business information.
 
 
 22
 Mr. Muglia concedes, and the facts confirm, that his relationship with Kaumagraph required him to disclose whatever information he had concerning the award of the contracts, including Kaumagraph's ranking if he knew it. We agree with the District Court's finding that Mr. Muglia had a duty to disclose certain information without finding that the relationship rose to a fiduciary level. A duty to disclose, however, does not necessarily mean that a fiduciary relationship exists and we do not so find here.
 
 
 23
 The next issue is determining when Mr. Muglia had enough relevant information about the contracts that Kaumagraph should have been informed about that knowledge. The District Court found that although Mr. Muglia had "significant confidence" that Kaumagraph would be awarded these projects from AC, he did not know the status of the awards with certainty before Kaumagraph received actual notification. The District Court found that Mr. Muglia could not have gone to Kaumagraph and stated unequivocally that it had the AC contracts prior to the actual notification. The District Court found that the statements made by Mr. Muglia during the first trial about his special knowledge and how much he knew were simply "puffing" in an effort to inflate his importance before the magistrate judge. The puffery was an attempt to support Mr. Muglia's strategy in the first trial that he alone was the reason for the increased business between Kaumagraph and AC. The District Court, therefore, did not give much credence to these statements in making a determination about when Mr. Muglia knew what. Furthermore, the District Court found that there was no evidence that Mr. Muglia knew the volume of sales that would result from these contracts. The District Court concluded that even if Mr. Muglia knew that Kaumagraph would be awarded the contracts, this knowledge was worthless if he was unaware of the volume of sales. August 17, 1992 Opinion at 23 (J.A. at 75).
 
 
 24
 Most important, the District Court went on to find that any information that Mr. Muglia may have possessed concerning the awarding of the contracts to Kaumagraph without the concomitant knowledge of the volume of those sales did not provide Kaumagraph with enough certainty that the projects would be awarded to it to cause Kaumagraph either (1) to change its course of dealing with Mr. Muglia by lowering Mr. Muglia's commission rate when his sales contract was renegotiated in the spring of 1984 or (2) to begin increasing its production capacity in anticipation of the AC contract awards. Id. at 23-24 (J.A. at 75-76). We agree with these factual findings made by the District Court. Kaumagraph did not prove that it would have changed its course of conduct even if it had any knowledge that Mr. Muglia may have possessed concerning the contract awards.
 
 Damages
 
 25
 We now turn to the damage issue. Kaumagraph contends that the District Court erred in failing to hold that Mr. Muglia forfeited all his commissions during the period of the alleged breach, which Kaumagraph argues is the entire period of time from the spring of 1984 until Mr. Muglia's termination in June of 1986. While Kaumagraph is correct that in certain circumstances forfeiture of all compensation is an appropriate remedy for breach of a fiduciary duty, this is not such a case. Kaumagraph relies primarily on the rule of Sweeney & Moore to support its argument that Mr. Muglia is entitled to none of the commissions earned after the date he breached his duty to Kaumagraph.
 
 
 26
 First, Sweeney & Moore is readily distinguishable as it deals with a fiduciary relationship in a real estate transaction and, as we stated earlier, there was no express finding by the District Court that Mr. Muglia breached a fiduciary duty that would warrant forfeiture of all commissions during the breach period. Second, the remedy of forfeiture of all compensation is not an absolute remedy in a situation such as this. Even if Mr. Muglia did breach some duty to Kaumagraph, the District Court is free to exercise its equitable powers in fashioning a remedy. The District Court, recognizing that it was to exercise its equitable powers in this case, carefully examined the facts and circumstances of this case and, in balancing the equities, decided that forfeiture of all commissions would be unjust to Mr. Muglia. After all, Kaumagraph too benefitted greatly from these contracts. Because Kaumagraph failed to prove that it was denied any contracts or suffered any injury whatsoever from Mr. Muglia's breach, Kaumagraph is not entitled to withhold commissions from Mr. Muglia. See Kingsley Assoc., Inc. v. Del-Met, Inc., 918 F.2d 1277, 1285 (6th Cir. 1990)(under Michigan law, dual representation by an agent that did not cause any damages did not warrant forfeiture of commissions). This is not the egregious case where the agent misappropriated a trade secret and gave it to a competitor or solicited employees away from a principal to start a competing business or usurped a business opportunity for himself. Although we do not wish to condone Mr. Muglia's conduct in this case, nor do we hold that this same conduct in other circumstances might not lead to a different outcome, the fact is that in this case there is no proof of serious misconduct causing injury to the principal.
 
 The Motion for Sanctions
 
 27
 In a post-trial motion, Kaumagraph sought sanctions against Mr. Muglia pursuant to Rule 11 of the Federal Rules of Civil Procedure. Kaumagraph contends that Mr. Muglia should be sanctioned for bringing a life-of-the-part claim for $6,000,000 because he knew the claim had no basis and was brought in bad faith to force Kaumagraph to settle on his other claims.[5] The magistrate judge ruled that this claim was not supported by the evidence and dismissed it. Report and Recommendation dated June 15, 1988 at 22-25 (J.A. at 202-05).
 
 
 28
 The District Court ruled that the existence of the language "life of the part" in the sales contract between Mr. Muglia and Kaumagraph made the claim not frivolous. Opinion of June 8, 1993 at 9 (J.A. at 511). The District Court ruled that it was not unreasonable for Mr. Muglia to interpret the words to provide for commission payments over a multi-year period and to bring a claim under that interpretation. We agree. As correctly pointed out by the District Court, the fact that the claim was found to be meritless does not mean that Mr. Muglia should be sanctioned for pursuing it.
 
 Prejudgment Interest
 
 29
 The question presented here is whether Michigan or Delaware's statutory rate of interest should be applied in assessing prejudgment interest. The District Court was correct in applying Michigan law to determine the amount of prejudgment interest and we affirm its conclusion.
 
 
 30
 First, Kaumagraph argues that Mr. Muglia failed to file a timely motion for amendment of the judgment to include prejudgment interest. Federal Rule of Civil Procedure 59(e) provides that a motion to amend a judgment must be filed within ten days of the filing of the judgment. Mr. Muglia filed the motion within ten days, but neglected to include a statement required by the local rules that the parties attempted to settle the matter before filing the motion. Apparently based on this omission, the District Court denied the motion and Mr. Muglia refiled the motion as a reconsideration motion outside of the initial ten-day postjudgment time period. The District Court then considered the amendment on the merits without addressing the timeliness issue. It was within the District Court's discretion to consider the refiled motion and we will not question its decision on this matter.
 
 
 31
 As to the merits of the issue, the general rule concerning the law that should be applied states that if an issue is procedural, the law of the forum is to be applied. If the issue is substantive, a conflicts analysis should be undertaken to determine what state law to apply. The analysis to be made here is the same as that made above to determine whether to apply Michigan or Delaware law to the breach of duty issue. As discussed above, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941), requires a federal court sitting in diversity to use the forum's law, including its conflict of laws rules, to analyze the issue.
 
 
 32
 Prejudgment interest has been characterized as both substantive and procedural. However, regardless of whether the issue is characterized as procedural or substantive, Michigan law applies. Under Michigan conflict principles relating to contract damages, "the rate of interest allowed as part of the damages for the breach of a contract is determined by the law of the place of performance." Bastian Bros. Co. v. Brown, 293 Mich. 242, 248, 291 N.W. 644 (1940)(citing Restatement (First) of Conflict of Laws Sec. 418). The place of performance of the contract is Michigan.
 
 
 33
 Kaumagraph argues that because the interest arises out of the contract damages awarded to Mr. Muglia and the contract clause states that Delaware law should apply to interpretation of the contract, Delaware law should be applied. Prejudgment interest, however, relates to the remedy, and is not a matter of contract interpretation where the parties have not specifically included a clause stating that the statutory interest rate of a particular state will be used in calculating any interest payments made pursuant to the contract. No such clause addressing interest exists in the contract between the parties here. Even if we were to apply Delaware law, we would then apply Delaware choice of law rules which indicate Michigan's prejudgment interest rate should apply. Cooper v. Ross & Roberts, Inc., 505 A.2d 1305, 1306 (Del. Super. 1986)("When a contract does not include a choice of law provision regarding the availability of prejudgment interest, the Delaware courts have concluded that the subject of prejudgment interest is governed by the substantive law of the state wherein the contract was to be performed.").
 
 
 34
 As the District Court also correctly pointed out, an interest-based conflicts analysis also leads to the application of Michigan law. Restatement (Second) of Conflicts of Law Sec. 188. The contract was signed by a Michigan resident and wholly performed in Michigan. Accordingly, under any analysis, the District Court was correct to apply Michigan's prejudgment interest rate to the contract award.
 
 
 35
 For the foregoing reasons, the District Court's opinion is AFFIRMED in all respects.
 
 
 
 [1]
 The Honorable William O. Bertelsman, Chief District Judge, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [2]
 The Joint Appendix will be referred to herein as "J.A. at ___."
 
 
 [3]
 Life-of-the-part commissions would allow for commissions to be paid to Mr. Muglia for all subsequent sales of parts initially sold during his tenure even if he were no longer representing the company
 
 
 [4]
 The District Court found that Mr. Muglia deliberately falsified a piece of documentary evidence in the second trial. We find that the District Court had discretion to decide that such an egregious and reprehensible act did not deprive Mr. Muglia of the amount to which he was entitled under his contract. Cf. ABF Freight Sys., Inc. v. NLRB, 114 S. Ct. 835, 842 (Scalia, J., concurring)("The principle that a perjurer should not be rewarded with a judgment -- even a judgment otherwise deserved -- where there is discretion to deny it, has a long and sensible tradition in the common law."). Mr. Muglia's deliberate deception, however, might suggest that he deserves either prosecution for perjury or a sanction
 
 
 [5]
 As described above, a life of the part claim is a contract theory of recovery that allows the salesperson to receive commissions on parts for the life of the contract, here three years, instead of just at the time of sale