RANSFORD v THE DETROIT EDISON COMPANY

Docket No. 58074. Submitted January 5, 1983, at Detroit.—Decided
April 5, 1983.

Duane Ransford died as a result of electrocution when the wire-
controlled model airplane he was flying became entangled with
the control wires of an airplane of Patrick K. Tierney and the
wires of one of the airplanes came in contact with electric
transmission lines owned by the Detroit Edison Company. At
the time of the accident, the deceased, Tierney, and Carl Giron
were engaged in giving a model airplane demonstration as part
of the entertainment at a picnic held by the Congressman Bill
Ford's Birthday Picnic Committee at a park owned by New
Liberty Park, Inc. Georgia Ransford, administratrix of the
estate of Duane Ransford, brought a wrongful death action in
Wayne Circuit Court against Detroit Edison, the picnic commit-
tee, the owner of the park and Patrick K. Tierney. Following a
six-day trial, defendants moved for directed verdicts. Henry J.
Szymanski, J., granted each defendant's motion for a directed
verdict. Plaintiff appeals. *Held:*

1. The proofs at trial showed that when Detroit Edison
installed the power transmission lines the area was open pas-
ture and farm land. The proofs further showed that the view of
lines was in no way obscured. Plaintiff's proofs were devoid of
any evidence that Detroit Edison was aware that the area was
now being used for model airplane demonstrations. Since the
type of power lines and the manner of their installation was
adequate for the area's use at the time of installation and there
was no evidence that Detroit Edison was aware of the changed
circumstances, the injury suffered by the deceased cannot be
said to have been a result which could have been foreseen by

REFERENCES FOR POINTS IN HEADNOTES
[1, 9] 57 Am Jur 2d, Negligence § 7.
[2] 75 Am Jur 2d, Trial §§ 463, 469.
[3, 5] 26 Am Jur 2d, Electricity, Gas, and Steam §§ 43, 48.
[4] 57 Am Jur 2d, Negligence §§ 166, 167.
[6, 8] 26 Am Jur 2d, Electricity, Gas, and Steam § 193.
[7] 62 Am Jur 2d, Premises Liability §§ 28, 66.

Detroit Edison. Accordingly, the directed verdict in favor of Detroit Edison was proper.

2. The owner or occupier of land has the duty to warn invitees who come upon the premises of any danger which the owner or occupier knows of or ought to have known of and of which the invitee is unaware. Viewing the evidence in the light most favorable to plaintiff, the evidence clearly established that plaintiff's decedent knew of the power lines and was aware of the potential danger the power lines posed with respect to the operation of a wire-controlled model airplane. Since plaintiff's decedent was aware of the danger, as a matter of law the picnic committee and the park owner owed no further duty to warn the deceased of the danger. The directed verdicts in favor of the committee and the park owner were properly granted.

3. Since there was conflicting evidence concerning Tierney's responsibility for the accident, the trial court erred in directing a verdict in favor of Tierney.

Affirmed in part; reversed in part.

1. NEGLIGENCE — DIRECTED VERDICTS.

Directed verdicts in negligence actions are disfavored; when deciding whether or not to grant a directed verdict the court must view the testimony in the light most favorable to the nonmoving party and draw the reasonable inferences therefrom which are in that party's favor.

2. MOTIONS AND ORDERS — DIRECTED VERDICTS.

A motion for directed verdict should be denied where the facts, viewed in a light most favorable to the nonmoving party, are such that reasonable minds could honestly reach different conclusions.

3. ELECTRICITY — POWER TRANSMISSION LINES.

The law does not require those maintaining electric power transmission lines to anticipate every possible fortuitous circumstance that might cause injurious contacts with such power lines.

4. NEGLIGENCE — FORESEEABILITY.

Recovery in a negligence action for personal injuries requires that the plaintiff establish that the injuries were the natural and probable consequence of the negligent act or omission of the defendant which, under the circumstances, an ordinarily prudent person ought reasonably to have foreseen or anticipated might occur as a result of such act or omission.

5. ELECTRICITY — POWER TRANSMISSION LINES — NEGLIGENCE — FORESEEABILITY.

The test to be applied to determine whether an electricity transmission company is negligent in its placement of electricity transmission lines is whether there is a likelihood or reasonable probability of human contact with the wires by persons who have a right to be in the place from which such contact with the wires is possible; if there is such likelihood or reasonable probability, the danger should have been foreseen or anticipated by the electricity transmission company.

6. ELECTRICITY — POWER TRANSMISSION LINES — NEGLIGENCE — FORESEEABILITY — DIRECTED VERDICTS.

A directed verdict in favor of an electricity transmission company is properly granted in an action for injuries incurred as a result of contact with uninsulated transmission wires by a wire-controlled model airplane where the area in which the transmission wires were installed was open farmland and pasture at the time the wires were installed, there was no likelihood or reasonable probability of human contact with the wires at the time the wires were installed, the view of the wires was not obscured in any way, and the electricity transmission company did not have notice of the fact that the area was used for wire-controlled model airplane demonstrations.

7. NEGLIGENCE — POSSESSORS OF LAND — INVITEES — DUTY TO WARN.

An owner or possessor of land owes the duty to all who are invited upon the premises to warn such persons of all dangers of which the owner or possessor knows or ought to know and of which the invitees are not aware.

8. NEGLIGENCE — POSSESSORS OF LAND — INVITEES — ELECTRICITY.

Directed verdicts in favor of the owner of and the possessor of land are properly granted in an action for injuries to an invitee who is injured when the wire-controlled model airplane he is demonstrating comes in contact with overhead electrical power lines where the proofs establish that the injured invitee was aware of the power lines, was an expert pilot of wire-controlled model airplanes, and was fully versed in the potential dangers posed by the power lines.

9. NEGLIGENCE — DIRECTED VERDICTS.

A directed verdict for a defendant should not be granted in a negligence action where the proofs establish that the defendant was involved in the events which led to plaintiff's injury and

there is conflicting evidence as to whether the injury resulted from the negligence of that defendant.

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman*), for plaintiff.

*Michael D. Gladstone,* for the Detroit Edison Company.

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Robert H. Feikens*), for Congressman Bill Ford's Birthday Picnic Committee.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Thomas F. Meyers*); and *Gromek, Bendure & Thomas* (by *Mark R. Bendure*), of counsel, for New Liberty Park, Inc.

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Gad L. Holland*), for Patrick K. Tierney.

Before: J. H. GILLIS, P.J., and D. F. WALSH and N. J. KAUFMAN,* JJ.

D. F. WALSH, J. Plaintiff, Georgia Ransford, administratrix of the estate of her deceased husband Duane Ransford, appeals from the entry of directed verdicts against her in favor of defendants The Detroit Edison Company, Congressman Bill Ford's Birthday Picnic Committee, New Liberty Park, Inc., and Patrick Kevin Tierney. Plaintiff's decedent was killed by electrocution while giving a model airplane demonstration. The directed verdicts were entered at the close of plaintiff's proofs, after six days of jury trial.

New Liberty Park is a private park located in Huron Township. The park is rented by various

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

groups for picnics and other activities. In the early 1970's, the park became the site of the annual picnic honoring Congressman Bill Ford's birthday.

Beginning in 1973, a model airplane demonstration was part of the entertainment at the picnic. Plaintiff's decedent, defendant Patrick Kevin Tierney and other members of the model airplane club to which they belonged were asked to give the demonstration. Defendant Tierney visited the park with plaintiff's decedent and others prior to their first performance. Plaintiff's decedent paced off an area in a designated open grassy field and determined that a demonstration of wire-controlled model airplanes could be given there safely. The airplane show was performed in that area of the park every year thereafter.

The eastern boundary of the area where the model airplane demonstration was given was marked by utility lines strung from poles owned by defendant Detroit Edison. There were two electrical power lines owned by Edison strung from the poles. These lines, which were clearly visible, were approximately 33 feet above the ground, carried 4,800 volts of electricity and were insulated only by airspace. The power lines were installed by Edison in 1947. At that time, the underlying property was owned by a farmer who held some picnics there, but the land basically was used as a cow pasture.

During the 1977 picnic, plaintiff's decedent, defendant Tierney, and Carl Giron presented a mock aerial combat exhibition with their wire-controlled model airplanes. During that exhibition, in response to difficulties being experienced by Mr. Giron's plane, plaintiff's decedent and defendant Tierney walked beyond the previously determined safe area and approached the power lines. The

control wires of their model airplanes became entangled, one of the planes came in contact with the power lines, and both men received powerful electrical shocks. Plaintiff's decedent was killed.

Plaintiff's decedent was an expert model airplane pilot. He was fully aware of the dangers posed to wire-controlled model airplane pilots by utility lines. He knew that he was to stay away from all utility lines—regardless of their voltage.

Plaintiff sued each defendant in negligence for the alleged wrongful death of her husband. As noted, the trial court directed verdicts in favor of each defendant at the close of plaintiff's proofs.

The disfavored status of directed verdicts in negligence actions is well established. *Muilenberg v Upjohn Co,* 115 Mich App 316, 331; 320 NW2d 358 (1982). In considering defendants' motions for directed verdict, the trial court was obliged to view the evidence, and all legitimate inferences therefrom, in the light most favorable to plaintiff; if reasonable persons could honestly reach different conclusions considering plaintiff's establishment of a prima facie case, the motions should have been denied. *Bouwman v Chrysler Corp,* 114 Mich App 670, 677; 319 NW2d 621 (1982). In reviewing the trial court's ruling, this Court applies the same standard required of the trial court. *Id.*

## Defendant Detroit Edison

Plaintiff argues that Edison was negligent in failing to warn her husband of the danger involved in contact with uninsulated power lines, in failing to insulate the lines, and in stringing the lines only 33 feet above the ground.

Defendant Edison responds that the evidence did not establish notice to Edison of the model air-

plane demonstrations, that plaintiff's decedent had surveyed the demonstration area for the sole purpose of determining the effect of the nearby power lines on the safety of the site, and that plaintiff's decedent knew that he was to avoid all overhead utility lines—insulated or uninsulated. Edison argues that it breached no duty to plaintiff's decedent.

Edison does not have the duty "to anticipate every possible fortuitous circumstance that might cause injurious contacts with [its] power lines". *Dees v L F Largess Co,* 1 Mich App 421, 427; 136 NW2d 715 (1965). The Supreme Court set forth the following standard of liability in *Clumfoot v St Clair Tunnel Co,* 221 Mich 113, 116-117; 190 NW 759 (1922):

> "In order that the plaintiff may recover it must appear that his injury was the natural and probable consequence of a negligent act or omission of the defendant which under the circumstances an ordinarily prudent person ought reasonably to have foreseen or anticipated might possibly occur as a result of such act or omission. * * *
>
> "* * * The test to be applied is, Was there a likelihood or reasonable probability of human contact with the wires by persons who had a right to be in a place from which such contact was possible? If so, the danger should have been foreseen or anticipated by the defendant."

In *Dees v L F Largess Co, supra,* the plaintiff construction worker was injured when a crane came in contact with power lines carrying 24,000 volts of electricity. The plaintiff had been fully aware of the presence of the power lines. Detroit Edison had maintained the lines, which were not insulated by a dielectric covering, at a height of 35 feet. This Court affirmed entry of directed verdict

for Detroit Edison, finding that the lines were insulated by airspace from any foreseeable contact and that Edison was not negligent in failing to add a dielectric insulation in anticipation of construction in the area.

Similarly, the Supreme Court affirmed entry of directed verdict for Detroit Edison in *Koehler v Detroit Edison Co,* 383 Mich 224; 174 NW2d 827 (1970), where the plaintiff, a construction worker, was killed by electrocution when a crane in which he was riding came too close to electrical lines located 30 to 35 feet above the ground. The lines were without insulating coating. The Court observed:

"With regard to negligence on the part of Detroit Edison, there is no testimony in this case from which a jury could find that the operation carried on with the crane was dangerous because of Detroit Edison's distribution line. The testimony is to the effect that there was sufficient room in which to work; that ironworkers fully understood the danger from electric wires and the importance of staying away from them; that there was no reason to expect trouble from the line or to alert Detroit Edison that a crane was to be used; that Koehler, Beard, Pankey, and others were aware of the existence of the line and could have requested Detroit Edison to insulate the line if they considered it necessary that such a step be taken; and that Detroit Edison was not apprised of the operation or requested to take any precautions. The mere fact that Detroit Edison knew a building was under construction near its power line and that, from time to time, mobile cranes were being brought upon the premises to be used in construction work, would not, standing alone, create a duty upon Detroit Edison to remove the charge, insulate the line, or notify the parties of a dangerous condition. We agree with the finding of the trial judge that there was no negligence on the part of Detroit Edison." *Koehler v Detroit Edison Co, supra,* p 231.

See also *Signs v Detroit Edison Co,* 93 Mich App 626; 287 NW2d 292 (1979), *lv den* 411 Mich 870 (1981).

Denial of Detroit Edison's motion for directed verdict was affirmed in *Wilhelm v Detroit Edison Co,* 56 Mich App 116; 224 NW2d 289 (1974), *lv den* 393 Mich 787 (1975). The power lines with which the *Wilhelm* plaintiff's decedent had come in contact met the wall of a shopping mall at a point immediately below metal trim which the decedent had been painting at the time of his accident. This Court found sufficient evidence that the conduct of the decedent had been reasonably foreseeable by Detroit Edison.

Closely analogous to the instant case is *Rice v Florida Power & Light Co,* 363 So 2d 834 (Fla App, 1978), *lv den* 373 So 2d 460 (Fla, 1979), where the Florida court affirmed entry of summary judgment for the defendant electric company. The *Rice* plaintiff's decedent, who was aware of the potential dangers of electricity, was electrocuted when the wires of his model airplane hit clearly visible, uninsulated power lines traversing an open field. The power lines had been installed 20 years prior to the accident, at a time when the area was one of expanding residential growth. At the time of the accident, the field served primarily recreational purposes. The Florida court rejected the plaintiff's claim that the changed use of the property created genuine issues of material fact as to whether the defendant utility company should have relocated the power lines, insulated them, elevated them, or warned users of hazards:

"[W]e conclude that, as a matter of law, it would be beyond the bounds of reason to require FPL [Florida Power & Light] to foresee an occurrence such as that presented by the instant case. Had a clear view of the

exposed lines not existed, or had FPL had actual notice that individuals were flying model airplanes attached to electrical conductors, the changed use of the underlying property might have been sufficiently persuasive to leave the questions of the existence of a duty and a breach of that duty for the resolution of a jury.

"While endorsing a high degree of care to which a power company is held, we decline to impose a continuing duty to protect any and all activity, however unlikely, occurring in the vicinity of lines which were initially located and installed in a reasonable manner. We hold that FPL's maintenance of its wires in the place and under the conditions described herein did not fall beneath the level of prudent foresight required of a supplier of electricity. Therefore, as a matter of law, appellee breached no duty owed the decedent." 363 So 2d 839.

Similarly, the testimony in the instant case established that the power lines were installed 30 years prior to the accident, when the land was essentially open pasture and farmland. We hold, as a matter of law, that at the time of installation of the power lines there was no "likelihood or reasonable probability of human contact" with them. *Clumfoot v St Clair Tunnel Co, supra,* p 117. In addition, plaintiff's proofs conclusively established that the view of the power lines was not obscured in any way. Her proofs were devoid of any evidence that Detroit Edison had notice of the wire-controlled model airplane demonstrations. In our judgment, this case involves a "fortuitous circumstance" not reasonably foreseen by Edison. See *Dees v L F Largess Co, supra,* p 427. Viewing the evidence in the light most favorable to plaintiff, we find that Detroit Edison breached no duty owed to plaintiff's decedent. The foreseeability of human contact in this case was considerably more remote than in *Koehler v Detroit Edison Co, su-*

*pra,* where the Supreme Court affirmed entry of directed verdict for Edison. We do likewise.

## DEFENDANTS NEW LIBERTY PARK, INC., AND PICNIC COMMITTEE

Plaintiff argues that there remain unresolved questions of fact as to whether defendant park or defendant committee had control of the park on the day of her husband's death and as to whether her husband was an invitee to whom a duty owed was breached.

Defendants park and committee respond, *inter alia,* that, assuming plaintiff's husband's status as invitee and these defendants' status as invitors, no duty was breached.

The duty of the owner or occupier of land toward invitees was described by Justice COOLEY in *Samuelson v Cleveland Iron Mining Co,* 49 Mich 164, 170; 13 NW 499 (1882):

"Every man who expressly or by implication invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, *and of which they are not aware."* (Emphasis supplied.)[1]

---

[1] See also Prosser, Torts (4th ed), § 61, p 394: "[I]n the usual case, there is no obligation to protect the invitee against dangers which are known to him * * *." But the invitor's duty to warn is not obviated by the invitee's knowledge of the danger if, as a reasonable person, the invitor should anticipate harm to the invitee despite the latter's knowledge. *Id.; Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244, 259; 235 NW2d 732 (1975); *Beals v Walker,* 416 Mich 469; 331 NW2d 700 (1982).

This case is not controlled by the *Quinlivan/Beals* doctrine, which has been applied to cases involving accumulations of ice and snow and which may be applicable in other cases involving hazards on the invitor's premises which the invitee cannot avoid even though he or she has been warned about them. For instance, an invitee who knows of dangerous accumulations of ice and snow on the invitor's premises may nevertheless have to traverse the ice and snow covered area to

Viewing the evidence in the light most favorable to plaintiff, we are persuaded that verdicts were properly directed for defendants park and committee. The evidence established that plaintiff's decedent was aware of the power lines in the field where the exhibition took place, that he was an expert pilot of wire-controlled model airplanes, and that he was fully versed in the potential dangers posed by utility lines. Under the circumstances of this case, we are persuaded that the reasonableness of these defendants' conduct toward plaintiff's decedent was established as a matter of law.

### DEFENDANT TIERNEY

Plaintiff argues that reasonable people could differ as to whether defendant Tierney acted as a reasonably prudent person would have acted under similar circumstances.

Defendant Tierney responds that plaintiff produced no evidence of his negligence and that the facts established plaintiff's decedent's negligence as the sole cause of death.

Defendant Tierney owed plaintiff's decedent a duty to conduct himself reasonably in light of the apparent risks; and his conduct is to be measured against the standard of a reasonable person faced with similar circumstances. *Moning v Alfono,* 400 Mich 425, 443; 254 NW2d 759 (1977), *reh den* 401 Mich 951 (1977).

There was conflicting and confusing evidence

---

get from the entrance of the store to the parking lot. The *Quinlivan/ Beals* doctrine, however, does not apply to cases in which the invitee can do whatever he came on the invitor's premises to do without coming into contact with the hazard or dangerous condition. In those cases the invitor's duty is only to warn the invitee of dangers of which the invitee is not aware, the theory being that a reasonable invitee will avoid the hazard if he has been warned of its existence.

concerning defendant Tierney's responsibility for the contact with the power lines. There is no question that defendant Tierney strayed from the area of safety and that his plane came in contact with the power lines. Viewed in the light most favorable to plaintiff, the evidence suggested that defendant Tierney led the way as he and plaintiff's decedent approached the power lines, that he was not paying attention to the proximity of the power lines—the presence and potential danger of which he was acutely aware, that his model airplane became entangled in the power lines, and that plaintiff's decedent's airplane then hit the wire controlling defendant Tierney's airplane.

Based on this evidence we are persuaded that plaintiff presented a prima facie case of defendant Tierney's negligence and that the trial court invaded the province of the jury in granting defendant Tierney's motion for a directed verdict.

Affirmed as to defendants The Detroit Edison Company, New Liberty Park, Inc., and Congressman Bill Ford's Birthday Committee; reversed as to defendant Patrick Kevin Tierney.