SCOTT v GREEN

Docket No. 69773. Submitted June 19, 1984, at Lansing.—Decided
    February 4, 1985.

   Plaintiff, Robert A. Scott, brought an action against Thomas H.
   Green, an attorney, James C. Chumbley and Jim Chumbley
   Chevrolet, Inc., alleging fraud and legal malpractice. Prior to
   trial, plaintiff settled his claims against Chumbley and the
   corporate defendant. Trial was had as to defendant Green only.
   Plaintiff alleged that Green had drafted an agreement between
   plaintiff and Chumbley regarding the issuance to plaintiff of
   certain corporate stock held by Chumbley, but never intended
   that any stock or assets be issued to plaintiff. Plaintiff also
   alleged that defendant Green had not upheld a pledge to pay
   plaintiff a percentage of a recovery in a suit brought by
   Chumbley, represented by Green, against General Motors Cor-
   poration. The Washtenaw Circuit Court, Kenneth B. Glaser,
   Jr., J., granted defendant Green's motions for directed verdicts
   on the claims of fraud and legal malpractice: Plaintiff appealed.
   Held:
      1. The directed verdict on the claim of legal malpractice was
   proper. Plaintiff presented no evidence to show that the defen-
   dant was acting as plaintiff's attorney, rather than as the
   corporation's attorney, when the acts upon which this action
   was based were done. Thus, plaintiff failed to establish the
   attorney-client relationship necessary for a claim of legal mal-
   practice.
      2. Many of plaintiff's fraud claims were directed toward
   defendant Chumbley and, since plaintiff settled with Chumbley,
   those claims are not germane to the allegations against Green.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 886.
[1, 2] 75 Am Jur 2d, Trial § 483.
[2] 75 Am Jur 2d, Trial § 482.
[3] 7 Am Jur 2d, Attorneys at Law § 223.
   Attorney's liability for negligence in preparing or conducting litiga-
   tion. 45 ALR2d 5.
[4] 7 Am Jur 2d, Attorneys at Law § 109.
[5] 7 Am Jur 2d, Attorneys at Law § 118.
[6] 37 Am Jur 2d, Fraud and Deceit § 12.

As to the claims against Green, the evidence does not support the assertions that Green was involved with the settlement of the General Motors action, that Green induced plaintiff to pay Chumbley for the agreement regarding the stock, that Green agreed to pay plaintiff anything recovered by Green in the GM suit, or that Green made any material representation to plaintiff in regard to the GM suit.

3. Plaintiff's claim regarding the allegedly fraudulent stock purchase agreement was essentially a claim against Chumbley for not performing the agreement, not against Green for the manner in which the agreement was drawn. Furthermore, the agreement was neither invalid nor unenforceable. The trial court did not err in directing a verdict in defendant's favor on the fraud claim.

Affirmed.

J. R. KIRWAN, J., agreed that the claim of legal malpractice was properly disposed of by the trial court. He would hold, however, that defendant Green's admission that, in his opinion, plaintiff's claim to a percentage of the corporate stock, based upon the agreement drawn by Green at the behest of plaintiff and Chumbley, was not legitimate, was sufficient evidence of a false representation to present a prima facie case of fraud. He would hold, therefore, that the trial court erred in directing a verdict on that issue.

OPINION OF THE COURT

1. MOTIONS AND ORDERS — DIRECTED VERDICT — APPEAL — PRIMA FACIE CASE.

The Court of Appeals reviews the grant of a defendant's motion for a directed verdict by viewing the evidence in a light most favorable to the plaintiff; the grant of the directed verdict will not be overturned where, viewing the evidence in such light, the plaintiff has not established a prima facie case.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY J. R. KIRWAN, J.

2. MOTIONS AND ORDERS — DIRECTED VERDICT — PRIMA FACIE CASE.

*A court must view the evidence and all legitimate inferences therefrom in the light most favorable to the plaintiff when considering a defendant's motion for a directed verdict; if reasonable persons could honestly reach different conclusions concerning the plaintiff's establishment of a prima facie case, the motion should be denied.*

3. ATTORNEY AND CLIENT — LEGAL MALPRACTICE.

*A plaintiff asserting a claim of legal malpractice has the burden*

*of proving: (1) the existence of the attorney-client relationship; (2) the acts which are alleged to have constituted the negligence; (3) that the negligence was the proximate cause of the injury; and (4) the fact and extent of the injury alleged.*

4. Attorney and Client — Representation of Corporation.

*An attorney who represents a corporation has for a client the corporation, not its shareholders.*

5. Attorney and Client — Unilateral Acts.

*A unilateral act is not sufficient to create an attorney-client relationship; such a relationship is based in contract.*

6. Fraud — Elements of Fraud.

*The elements of fraud are (1) a material representation which is false, (2) known by the defendant to be false, or made recklessly without knowledge of its truth or falsity, (3) that the defendant intended the plaintiff to rely upon the representation, (4) that, in fact, the plaintiff acted in reliance upon it, and (5) the plaintiff thereby suffered injury.*

*Henry, Keenan & Myles* (by *Daniel J. Henry, Jr.,* and *Patrick A. Keenan),* for plaintiff.

*Collins, Einhorn & Farrell, P.C.* (by *Clayton F. Farrell* and *Noreen L. Slank),* for defendant.

Before: MacKenzie, P.J., and Beasley and J. R. Kirwan,* JJ.

Beasley, J. Plaintiff, Robert A. Scott, appeals as of right from a directed verdict granted in favor of defendant, Thomas H. Green, at the conclusion of plaintiff's proofs dismissing claims of fraud and legal malpractice. On appellate review, we affirm. We adopt the recitals of fact and the conclusions contained in the dissenting opinion, except with respect to the reversal of the directed verdict regarding plaintiff's claim of fraud.

In his complaint, plaintiff includes a Count V, entitled "Fraud", in which he alleges, among other things, as follows:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"69. Defendant James Chumbley and defendant lawyer Greene *[sic]* acting in concert and participation did the following acts intentionally and maliciously, and with intent to defraud plaintiff:

"69a. Prepared an agreement and stock option dated August 3, 1972, (Exhibit A) which purported to transfer twenty-five (25%) percent of the stock in Jim Chumbley Chevrolet, Inc., and induced plaintiff to pay twelve thousand and 00/100 ($12,000.00) dollars therefor (Exhibits B-1 and B-2) and accepted plaintiff's payment, but never intended to issue any stock to or pay over any assets to plaintiff.

"70. Defendant Chumbley took plaintiff's money and gave his personal promissory notes (Exhibits C and D) therefor, but never intended to repay plaintiff the principal, nor did he intend to pay plaintiff the interest due thereon.

"70a. Defendant Chumbley defrauded plaintiff by fraudulently taking his money on a false promise to repay.

"71. Defendant Chumbley and defendant lawyer Greene prepared an agreement dated November 25, 1975, (Exhibit F) which purported to guarantee plaintiff in consideration of his work preparing the GM suit twenty (20%) percent of any settlement in the suit filed by defendant James Chumbley and the corporate defendant against GM, said suit to be prosecuted by defendant lawyer Greene.

"71a. Plaintiff did the work necessary to prepare said suit, and defendant James Chumbley and the corporate defendant did receive a substantial settlement of one hundred fifty thousand and 00/100 ($150,000.00) dollars, of which defendant lawyer Greene took thirty-seven thousand two hundred sixty-nine and 00/100 ($37,269.00) dollars in attorney's fees.

"71b. Defendants drew the settlement checks, or caused them to be drawn in such a manner as to ensure that defendant lawyer Greene and defendant James Chumbley got all or substantially all the settlement money so that none would be paid to the corporation or to plaintiff, who has to date received nothing from said settlement.

"71c. Defendants never intended to pay and have

refused to pay plaintiff the money he earned. The individual defendants contrived and designed to settle the suit against GM in a manner which was most beneficial to themselves, and without regard to the interest and claim of plaintiff, and in the manner most detrimental to plaintiff.

"72. In August, 1980, defendant lawyer Greene falsely and fraudulently represented that he was filing an appearance on behalf of James Chumbley, in this action; that it was not a conflict of interest to do so; that plaintiff's promissory notes would be paid in full as soon as the GM suit was tried or settled; and that plaintiff and his counsel should stipulate to an enlargement of time in which to file an answer until December 1, 1980, at which time this action would be settled by full payment of the two (2) promissory notes (Exhibits C and D).

"72a. Defendants never intended to pay or to arrange for payment of said notes, but sought the enlargement of time only to minimize the costs of defense of this action; to prevent entry of a default herein; and to buy time in which to secure the GM settlement to themselves.

"72b. As a consequence, said defendants worked a fraud on plaintiff and on this court.

"73. Defendant James Chumbley and defendant lawyer Greene have intentionally and maliciously converted moneys due plaintiff to their own use, with the intent to permanently deprive plaintiff of his funds.

"74. Plaintiff has acted in good faith in his dealings with defendants.

"75. Plaintiff relied to his great detriment on the intentionally fraudulent acts and misrepresentations by defendant [sic].

"76. As a direct and proximate result of the fraudulent conduct of defendants, plaintiff has been damaged in an amount not less than sixty-eight thousand two hundred fifty and 00/100 ($68,250.00) dollars."

Regarding this fraud count, it must be noted at the outset that plaintiff has settled with defendant Chumbley for $28,000. Therefore, paragraphs 69

and 69a become irrelevant. The key portion of the claims in those paragraphs is the allegation that defendants never intended to issue any stock or to pay over any assets to plaintiff. Since the proofs are clear that control of the stock and possession of the assets was with and in Chumbley, rather than Green, and since plaintiff has chosen to settle with Chumbley, these paragraphs do not assert a cause of action against defendant Green.

Paragraphs 70 and 70a deal only with Chumbley and, thus, are not relevant here. The agreement referred to in paragraph 71 was between plaintiff and defendant Chumbley. Plaintiff says that in the agreement Chumbley "purported to guarantee" him 20% of any recovery in the suit contemplated and pending against GM, in consideration of services to be performed by plaintiff. While preparing the agreement as attorney for the automobile dealership, Green was definitely not a party to the agreement. As indicated in the above quoted paragraphs 71a, 71b and 71c, plaintiff claims that in some way defendants Chumbley and Green caused the settlement checks to be drawn so that they got all, or substantially all, of the settlement money, and so that none would be paid to the corporation (the automobile dealership) or to plaintiff. In paragraph 71c, plaintiff also alleges that defendants never intended to pay and have refused to pay plaintiff the money he says he earned.

There are several obvious difficulties with the fraud theory as contained in plaintiff's complaint. First, it is not clear as to exactly what fraudulent acts plaintiff charges were committed by defendant Green. Second, the testimony at trial indicates clearly that, for personal and health reasons, Green withdrew from the case against GM and that it was, in fact, prosecuted to a conclusion by another Ann Arbor law firm, Bishop & Shelton.

The latter firm negotiated the final settlement with GM and actually physically received the checks. It was only after the settlement had been made that the other Ann Arbor law firm advised defendant Green of the fact of the settlement. The documentary evidence is simply contrary to plaintiff's claim that in some way defendant Green manipulated the checks to his own advantage.

Furthermore, and perhaps equally important, plaintiff, in fact, settled with defendant Chumbley for $28,000 immediately prior to trial and then proceeded to trial against defendant Green without amending his complaint. It is apparent from the complaint that the gist of plaintiff's claims ran against defendant Chumbley and against defendant corporation. In fact, the original suit commenced in the Federal court did not even name defendant Green as a party defendant. Thus, it seems almost an afterthought that plaintiff chose to add defendant Green as a party. The undisputed testimony of both defendant Green and plaintiff was that, over a period of time, they both understood and discussed that settlement of plaintiff's claims would be made between plaintiff and defendant Chumbley. There was never any indication that defendant Green would be responsible for satisfying plaintiff's claims against defendants James C. Chumbley and Jim Chumbley Chevrolet, Inc.

On appeal, plaintiff asserts that attorney Green prepared the agreement and stock option of August 3, 1972, purporting to transfer 25% of the stock in Jim Chumbley Chevrolet to plaintiff. On appeal, plaintiff asserts that defendant Green induced him to pay $12,000 to Chumbley for the agreement of Chumbley regarding the 25% of the stock. The evidence does not support this asser-

tion. The check for $12,000 did not go to defendant Green, but to defendant James Chumbley.

On appeal, plaintiff also asserts that defendant Green never intended to pay Scott any money obtained from a recovery, notwithstanding Scott's allegedly extensive work over a period of four years. In the sense that defendant Green never personally agreed to pay any money to Scott, the statement that he never intended to do so is true. But, there is nothing in the complaint or in the evidence to indicate that defendant Green agreed or was supposed to pay Scott for moneys owed Scott by Chumbley out of attorney fees or costs payable to Green. On the contrary, the matter of reimbursement to plaintiff for the work he did over the four-year period in connection with the GM case was always assumed by everybody to be a subject between plaintiff and defendant Chumbley.

On appeal, plaintiff also alleges that, among other things, defendant Green sought to buy time in which to secure the GM settlement "to themselves". There is not any evidence to support this allegation.

On appeal, plaintiff alleges as follows:

"In the instant case, appellant alleged that defendant attorney Green and Chumbley both represented to Scott that Scott held a 25% equity ownership in Chumbley Chevrolet, that they never intended to pay over such assets to Scott, that attorney Green and Chumbley both represented to Scott that he would be paid for his work with 20% of the GM settlement proceeds, that they never intended to pay such money to Scott, and further that Green and Chumbley falsely represented that there was no conflict of interest in Green suing on behalf of Chumbley and falsely represented that the promissory notes would be paid over in full out of the GM settlement."

Plaintiff's statement of his theory of liability

makes it plain that he relied upon some kind of alleged joint action between defendants Green and Chumbley. The difficulty with this theory at the very outset is that plaintiff has settled with defendant Chumbley, including the very claims that he speaks of in his brief on appeal, namely, any claim by plaintiff regarding the so-called 25% equity ownership in Jim Chumbley Chevrolet and including any claim for part of the 20% of the settlement with GM for work subsequently performed by plaintiff. Since we are left to speculate as to what the consideration was for the $28,000 to be paid to plaintiff by Chumbley in settlement, it would seem virtually impossible for plaintiff to prove fraud on the part of defendant Green. As a matter of fact, in directing a verdict for defendant, the trial judge seemed to put his finger on the matter when he said:

"I'm going to dismiss the fraud count. I don't find any material for—any knowledge of the falsity of the statement or making the statement or state recklessly without any knowledge of its truth with a positive assertion.

"The most that I can see that has been proven and that the jury could find in viewing the evidence in a light most favorable to the plaintiff in this case is, that Mr. Green told Mr. Scott that when the time came, that there was money from the GM suit, that Mr. Scott would be paid. He never guaranteed any particular amount of payment. He never suggested how much payment he would get.

"I see no evidence of any material misrepresentation —or, material representation that Mr. Green either knew it was false or made recklessly without any knowledge of its truth with a positive assertion.

"The evidence clearly shows that it was a matter that Mr. Green was following what he believed to be so and reasonably believed to be so, and when the money came in from the settlement, Mr. Scott would be paid. I find no evidence of any particular amount. In fact, Mr. Scott

could have been paid $13,000 if he had wanted to accept that."

The dissent rests upon the written agreement entitled "Agreement and Stock Option", dated August 3, 1972, signed by defendant Chumbley and plaintiff Scott and prepared by defendant Green. This was another instance in which plaintiff attempted to prove his case by calling the opposite party, in this case defendant Green, under the statute.[1] In so doing, plaintiff's counsel attempted to show that, in filing an answer on behalf of Chumbley in the personal suit brought by Scott against Chumbley on the promissory note, defendant Green violated the code of professional responsibility. Plaintiff attempts to somehow translate this into fraud apparently by claiming that he was induced to withhold taking Chumbley's default by the fact of defendant Green's filing an answer on behalf of Chumbley pending retention of another attorney by Chumbley to represent him in that case. We find no fraud whatever in this exchange. Defendant Green made it quite clear that in the event of disputes between plaintiff and defendant Chumbley, he, Green, would represent neither. In fact, at the time, the two attorneys, defendant Green and Keenan, plaintiff's present counsel, appeared to be in agreement regarding that procedure, which was merely ·to extend the time for filing responsive pleadings so that Chumbley could retain counsel and avoid having his default taken. Thus, Chumbley would have an opportunity to have his day in court regarding plaintiff's claims against him. This did not constitute fraud on the part of defendant Green.

The exchange to which the dissent refers is apparently as follows:

---

[1] Experienced lawyers seldom try to prove a case in chief by calling the opposite side under the statute.

"*Q. [by plaintiff's counsel]* Now, why did you write down that twenty-five percent of the corporation from date of agreement, and then affixed a figure to it.

"*A. [by defendant Green]* Because it was the claim of Mr. Scott that he was owed a percentage of the corporation for the period from the date of the agreement, August 3rd, 1972, up until March of '76, which I thought was the date that Motors Holding was paid off.

"*Q.* In your experience as an attorney and as the attorney performing legal services for Chumbley Chevrolet, Incorporation, was his claim legitimate?

"*A.* Not by the terms of the August 3rd, 1972 agreement, Mr. Keenan."

The "Agreement and Stock Option" between plaintiff and Chumbley, dated August 3, 1972, among other things, provided: .

"A. In consideration of the sum of one ($1.00) dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, Chumbley does hereby give and grant to Scott the option to purchase forty-nine (49%) percent of the issued shares of the capital stock of Jim Chumbley Chevrolet, Inc., a Delaware corporation, for the sum of eighty one thousand three hundred and No/100 ($81,300.00) dollars. The term of this option shall be five (5) years from the date of the execution hereof.

"B. As a condition to the exercise of this option, and the transfer and sale of the stock hereunder, no transfer, assignment or sale of said stock shall take place, nor shall any rights accrue to Scott except as hereinafter specifically set forth until such time as all obligations of Jim Chumbley Chevrolet, Inc., to General Motors Holding Corporation shall have been fully and completely satisfied. In the event that the obligations due and owing to General Motors Holding Corporation shall not have been fully satisfied within the term of this option, Chumbley shall repay to Scott all funds paid by him pursuant to this option, together with accrued interest at the rate of six (6%) percent per annum. Said reimbursement shall be paid within thirty (30) days after the termination of this option.

*    *    *

"F. In the event that General Motors Holding Corporation shall exercise its right to buy out the shares of Jim Chumbley Chevrolet, Inc. for any reason, Scott, notwithstanding the fact that no shares have actually been issued to him, shall be entitled to a payment which equals that percentage of the issued stock of the corporation converted into shares as determined under paragraph 'C' hereof, multiplied by the book value per share of stock as determined by General Motors Holding Corporation. In the event of Chumbley's death, said payment shall become an obligation of his estate, and shall be paid therefrom."

Thus, until General Motors Holding Corporation was paid off in March, 1976, plaintiff was not entitled to exercise his option to buy 49% of the stock of Jim Chumbley Chevrolet, Inc. According to defendant Green, plaintiff claimed he was entitled to "a percentage of the corporation" for the period between August 3, 1972, and March, 1976. Defendant Green said the agreement did not so provide. We would agree.

Plaintiff was thoroughly experienced in the operations of automobile dealerships. In fact, plaintiff testified that he was able to engineer a tax refund for Jim Chumbley Chevrolet, Inc. of around $100,-000, which was used to buy out the stock of General Motors Holding Corporation:

"*Q.* So, at that point, he [Chumbley] could have sold his stock; right?

"*A.* That is correct.

"*Q.* So, did he [Chumbley] give you the twenty-five percent that you had paid the $12,000 for, at that point?

"*A.* No.

"*Q.* Why not?

"*A.* He [Chumbley] said because we were involved in

a lawsuit or getting ready for a lawsuit against GM;
* * *.

* * *

*"The Witness:* I could have, also, at this point, paid sixty-nine thousand more and became a forty-nine percent stockholder, which I chose not to do."

Viewed in context, it seems apparent that while Chumbley defaulted in his obligation to plaintiff, this did not constitute fraud on the part of defendant Green.

The dissent says:

"* * * that defendant made a material representation, by drafting the stock agreement, which he knew was 'false', in the sense that it did not do what plaintiff understood it would do, even though it was drafted at plaintiff's direction. Defendant argues that his statement regarding the agreement's invalidity was merely an exercise of his professional judgment. That may be, but that is for the jury to decide. In my view, a prima facie case of fraud was presented."

We do not agree that defendant Green drafted a stock agreement that he knew was false, in the sense that it did not do what plaintiff understood it would do. We do not find the agreement ambiguous. The problem was not with the terms of the agreement, but with the fact that Chumbley seems not to have performed it. Plaintiff's claim was against Chumbley for breach of the agreement, not against defendant Green.

We have no great difficulty in understanding the agreement. In fact, plaintiff seems to have understood that he need look to Chumbley for performance. Neither do we understand defendant Green's testimony to constitute an admission that the agreement was "invalid". On its face, the agreement was neither invalid nor unenforceable.

The way to determine the validity of the agreement would have been to go to trial against Chumbley. This plaintiff did not do, instead choosing to settle. We see no jury issue here as to plaintiff's claim against defendant Green.

In this case, both sides have cited *Kukla v Perry*[2] and *Fassihi v Sommers, Schwartz*,[3] although essentially in regard to plaintiff's legal malpractice claim. Neither case helps plaintiff on his fraud claim. *Kukla* was essentially a case of a self-serving, over-reaching lawyer who was required to account to his client, the plaintiff. The *Kukla* facts readily distinguish it from the within case. In *Fassihi,* the court noted that, while no attorney-client relationship exists between the corporation's attorney and the entity's shareholders, the attorney may owe a fiduciary duty to the shareholders. However, in the within case, plaintiff never raised such an issue in his complaint nor at trial. Thus, plaintiff did not preserve the issue for appeal. Further, we do not believe that manifest injustice has resulted from such failure.

In conclusion, even taking the evidence in a light favorable to plaintiff,[4] we do not believe plaintiff has established a fraud claim against defendant.

Affirmed.

MacKenzie, P.J., concurred.

J. R. Kirwan, J. *concurring in part, and dissenting in part).* Plaintiff appeals as of right from a directed verdict granted in favor of defendant Thomas Green on plaintiff's claim of fraud and legal malpractice against him.

---

[2] 361 Mich 311; 105 NW2d 176 (1960).

[3] 107 Mich App 509; 309 NW2d 645 (1981).

[4] *Ransford v Detroit Edison Co,* 124 Mich App 537; 335 NW2d 211 (1983).

Plaintiff, an accountant, had been hired by James Chumbley to serve as general manager and secretary-treasurer of Jim Chumbley Chevrolet, Inc. The dealership eventually folded after General Motors cancelled its franchise. Defendant, as Chumbley Chevrolet's attorney, then filed a lawsuit against General Motors, naming Chumbley and Chumbley Chevrolet as plaintiffs. That suit was settled several years later for $150,000.

Pursuant to two agreements defendant drafted, defendant was to receive 40 percent of the "net amount of money collected" from the lawsuit; plaintiff was to get 20 percent of the "net proceeds of any judgment or settlement" in return for his services in liquidating the dealership and in providing defendant with assistance in conducting the lawsuit. Deduction of costs and expenses left the settlement balance at $121,343.06. Plaintiff understood he would receive 20 percent of that. Instead, defendant and the other attorneys who worked on the lawsuit took 40 percent of the original $150,-000; defendant personally received $36,000. Chumbley received $66,343.06. Defendant understood plaintiff was to receive 20 percent of Chumbley's share, and not 20 percent of the gross. Defendant and Chumbley offered plaintiff $13,000, which plaintiff refused to accept.

Plaintiff brought this action against Chumbley, the dealership, and attorney Green, claiming he never received the sums he was entitled to after settlement of the lawsuit. Prior to filing this action, plaintiff had sued Chumbley on some notes plaintiff held; according to plaintiff, that suit was dropped because of defendant's assurances that plaintiff would recover on these once the GM settlement came in.

Plaintiff settled his action against Chumbley.

In considering defendant's motions for directed

verdict, the trial court was obliged to view the evidence, and all legitimate inferences therefrom, in the light most favorable to plaintiff; if reasonable persons could honestly reach different conclusions concerning plaintiff's establishment of a prima facie case, the motions should have been denied. In reviewing the trial court's ruling, this Court applies the same standard required of the trial court. *Ransford v Detroit Edison Co,* 124 Mich App 537, 542; 335 NW2d 211 (1983).

In an action for legal malpractice, the plaintiff has the burden of proving: (1) the existence of the attorney-client relationship; (2) the acts which are alleged to have constituted the negligence; (3) that the negligence was the proximate cause of the injury; and (4) the fact and extent of the injury alleged. *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 690; 310 NW2d 26 (1981), *lv den* 413 Mich 913 (1982). The trial court granted defendant's motion for directed verdict on the legal malpractice claim because it ruled that plaintiff had failed to prove the first element, the existence of an attorney-client relationship between plaintiff and Green. After reviewing the facts, we affirm the directed verdict on that count.

Plaintiff first met defendant Green, who was Chumbley Chevrolet's attorney, when defendant drafted a stock option agreement for them. Plaintiff and Chumbley had worked out the details of the agreement, then asked defendant to draft it. Plaintiff understood that the agreement entitled him to purchase 25% of the stock of Chumbley Chevrolet, for which he paid $12,000, and to eventually obtain 49% of the stock, once the dealership's obligations to General Motors Holding Corporation were satisfied, since it owned all the stock of the dealership.

Defendant also prepared the appropriate docu-

ments for purchase of some land next to the dealership, after plaintiff and Chumbley had negotiated the deal. He similarly drew up a partnership agreement for plaintiff and Chumbley, but was contacted to do so only after the partners had worked out all the details between themselves. Plaintiff did not recall ever either receiving a bill or paying defendant for any of these services. On two other occasions, defendant was hired by Chumbley Chevrolet to represent plaintiff in connection with suits filed by others against Chumbley Chevrolet.

Plaintiff hired defendant to represent him during his divorce, and also to bring a lawsuit to recover damages for loss of some personal property. Plaintiff acknowledged that these two actions were the only matters in which defendant represented him on a personal, rather than a corporate, basis. Plaintiff testified that at all other times defendant was the attorney for the corporation, Chumbley Chevrolet, not his personal attorney.

Where an attorney represents a corporation, the attorney's client is the corporation and not the shareholders. *Fassihi v Sommers, Schwartz, Silver, Schwartz & Tyler, PC,* 107 Mich App 509, 514; 309 NW2d 645 (1981). Plaintiff introduced nothing at trial to contradict this proposition that defendant's client was the corporation, Chumbley Chevrolet, and not plaintiff, even though, as plaintiff stated, he "was part of the corporation".

Although plaintiff may have mistakenly believed that defendant was looking out for plaintiff's interests at the same time defendant was representing the corporation, a unilateral act is not sufficient to create an attorney-client relationship, the attorney-client relationship being based in contract. *Fletcher v Bd of Ed of School Dist Fractional No 5,* 323 Mich 343, 348; 35 NW2d 177 (1948). Plaintiff

points to no action on defendant's part that might signify that defendant was plaintiff's attorney as opposed to the dealership's, and according to *Fassihi* defendant could not be both. Therefore, a directed verdict on the legal malpractice claim was proper.

The trial court also granted a directed verdict against plaintiff on his claim of fraud.

The elements of fraud are: (1) a material representation which is false; (2) known by defendant to be false, or made recklessly without knowledge of its truth or falsity; (3) that defendant intended plaintiff to rely upon the representation; (4) that, in fact, plaintiff acted in reliance upon it; and (5) thereby suffered injury. *Fassihi, supra,* p 517. The court found that plaintiff had failed to present any evidence on an essential element of fraud, that defendant knew his representations to plaintiff were false, or that he made them with reckless disregard as to their truth or falsity. Plaintiff argues that defendant knew the stock option agreement would never give plaintiff 25% of the corporation's assets. The trial judge based his decision on another aspect of this suit, concerning the amount of money plaintiff would receive from the GM settlement, and did not rule on the question of defendant's knowledge of the stock option agreement's invalidity.

Defendant, called as an adverse witness, admitted that plaintiff's claim to 25% of the corporation's shares based on the stock option agreement was, in his opinion as an attorney, not legitimate. Defendant also acknowledged that he had drafted that agreement, and that his obligation as corporate attorney was to follow the directions of the officers. Defendant also knew the agreement was to provide plaintiff an incentive not to accept another job offer. Defendant stated that he never

informed plaintiff that his claim was no good because he did not want to take sides as between the two partners, and he felt he could not give plaintiff legal advice as far as corporate matters were concerned.

I believe this is sufficient evidence that defendant made a material representation, by drafting the stock agreement, which he knew was "false", in the sense that it did not do what plaintiff understood it would do, even though it was drafted at plaintiff's direction. Defendant argues that his statement regarding the agreement's invalidity was merely an exercise of his professional judgment. That may be, but that is for the jury to decide. In my view, a prima facie case of fraud was presented.

Plaintiff also stated a claim for breach of contract in his complaint. Although plaintiff presented testimony at trial raising questions of fact concerning the agreements as to settlement proceeds drafted by defendant, we have been unable to determine what happened to this count and must presume it was dismissed at some point.