**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0180n.06

Case Nos. 18-1392/1395

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NEAL COHEN, DARREN CHAFFEE, | ) | |
| | ) | **FILED** |
| Plaintiffs-Appellees/Cross-Appellants, | ) | Apr 05, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| SSL ASSETS, LLC, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| JAFFE RAITT HEUER AND WEISS, P.C.; | ) | |
| JEFFREY MICHAEL WEISS; LEE | ) | |
| KELLERT; DEBORAH L. BAUGHMAN, | ) | |
| | ) | |
| Defendants-Appellants/Cross-Appellees. | ) | |

BEFORE: BATCHELDER, ROGERS, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Neal Cohen and Darren Chaffee wanted to structure a deal in a way that would avoid millions in legal liability. So they sought legal advice from the law firm Jaffe, Raitt, Heuer and Weiss, P.C. ("Jaffe"). Turns out, Jaffe gave them bad advice, and Cohen, Chaffee, and one of the companies they own (SSL Assets, Inc. ("SSL")) ended up on the hook for several million dollars. All three sued Jaffe for legal malpractice and won, but the jury awarded them less in damages than they wanted. While both sides appeal, we affirm.

I.

Neal Cohen and Darren Chaffee buy and sell distressed businesses. While investigating the possible purchase of LSI Corporation of America, Inc. ("LSI"), Cohen and Chaffee discovered that LSI had a potential liability: its underfunded pension plan. Under ERISA, this liability can spread to other companies in the same "common control group"—namely, other companies that are owned by more or less the same people. *Cent. States Se. & Sw. Areas Pension Fund v. Chatham Props.*, 929 F.2d 260, 264 (6th Cir. 1991). Cohen and Chaffee worried that if they bought LSI, then LSI's pension liability would spread to other companies they owned. And if liability spread, it would cost their other companies millions.

Although they understood this risk "pretty well," neither Cohen nor Chaffee is a lawyer, so they sought out legal advice from Jaffe. R. 1-2, Pg. ID 25. In his email to one of Jaffe's partners, Jeffrey Weiss, Chaffee wrote that "[o]ne of the big issues in [the LSI] deal" was its "multi-employer pension plan." R. 1-2, Pg. ID 25. Chaffee requested legal advice, saying "[w]e also want to be sure that we aren't personally liable or put our other assets/companies at risk." *Id.* One of these companies was SSL, though Chaffee never named it.

Following that email, Weiss and the firm got to work, but Jaffe never sent a written engagement letter setting out exactly whom the firm represented. And Weiss never discussed with Cohen or Chaffee the companies that the two own or manage. Nevertheless, the firm came up with a corporate structure that Weiss told Cohen and Chaffee would save them from pension liability. But Weiss was wrong. After the LSI acquisition closed, the company's pension liabilities spread to SSL.

Cohen, Chaffee, and SSL sued Jaffe and its lawyers for legal malpractice. During the litigation, a key question emerged: who exactly had Jaffe been representing? At summary

judgment, the district court held that Jaffe at least had been representing Cohen and Chaffee individually but left the representation of SSL for the jury to decide.

During a four-day trial, the jury heard conflicting evidence on SSL's representation. Ultimately, the jury found that Jaffe had both represented SSL and committed legal malpractice. Following trial, the district court denied Jaffe's motion for either judgment as a matter of law or a new trial, which Jaffe now appeals. Cohen and Chaffee separately cross-appeal the admission of evidence that the jury considered in its damage calculation. We review each in turn.

II.

Jaffe does not dispute the jury's malpractice decision. Instead, Jaffe argues only that the district court should have granted it either judgment as a matter of law or a new trial because there was insufficient evidence proving that it had an attorney-client relationship with SSL. Without an attorney-client relationship between Jaffe and SSL, Jaffe cannot be held liable for legal malpractice to SSL. We review the district court's decision on a motion for judgment as a matter of law de novo, *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 466–67 (6th Cir. 2009), and the denial of a new trial for abuse of discretion, *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013).

The existence of an attorney-client relationship "may be implied from conduct of the parties." *Macomb Cty. Taxpayers Ass'n v. L'Anse Creuse Pub. Schs.*, 564 N.W.2d 457, 462 (Mich. 1997); 7 Am. Jur. 2d *Attorneys at Law* § 137. An attorney-client relationship exists if the conduct shows that (1) a potential client sought the advice or assistance of an attorney, (2) this advice or assistance was within the attorney's competence, and (3) the attorney agreed to or *actually provided* that advice or assistance. *Macomb Cty.*, 564 N.W.2d at 462; 7 Am. Jur. 2d *Attorneys at Law* § 137. Ultimately, this factual question "depends on the relations and mutual understanding

of the parties, on what was said and done, and all the facts and circumstances of the particular undertaking." *Case v. Ranney*, 140 N.W. 943, 946 (Mich. 1913); *accord Fletcher v. Bd. of Ed. of Sch. Dist. Fractional No. 5, Brighton & Genoa Tps., Livingston Cty.*, 35 N.W.2d 177, 180 (Mich. 1948); *see also Sanders v. Tumbleweed Saloon, Inc.*, No. 338937, 2018 WL 5629640, at *3 (Mich. Ct. App. Oct. 30, 2018) (citing 7 Am. Jur. 2d *Attorneys at Law* § 137 (2017)).

At trial, the jury heard two different stories about whether Jaffe and SSL had an attorney-client relationship. Cohen and Chaffee testified that they sought advice for both themselves and their companies, including SSL. *See Macomb Cty.*, 564 N.W.2d at 462. They pointed to Chaffee's email to Jaffe about "other assets/companies" as conclusive proof that they intended for Jaffee to represent SSL. *See id.*; R. 96, Pg. ID 2660–61, 2664. Then they had an ERISA expert testify that if he had received such an email referring to "other assets/companies," he would have believed that his "client is the group" of companies. R. 98, Pg. ID 3097. Additionally, Weiss—one of Jaffe's own attorneys—specifically admitted on cross-examination that he "owed a duty of care to Mr. Cohen and Mr. Chaffee *and their other assets and companies*." R. 98, Pg. ID 2968 (emphasis added). While he did not acknowledge an attorney-client relationship with SSL, Weiss said that "duty of care" meant that he would "look out for their interest, and do what is reasonable and appropriate under the circumstances." *Id.* Finally, Cohen and Chaffee presented evidence that Jaffe actually provided them the requested (if erroneous) advice on avoiding liability for those companies. The advice Jaffe gave thus specifically encompassed the work that Cohen and Chaffee sought on behalf of their companies, including SSL. *See Macomb Cty.*, 564 N.W.2d at 462; 7 Am. Jur. 2d *Attorneys at Law* § 137.

For its part, Jaffe put its lawyers, including Weiss, on the stand to rebut Cohen and Chaffee's claims about SSL's representation. Weiss said that Jaffe did not represent SSL because

it did not know about SSL. Jaffe presented its own expert who testified that Chaffee's initial email merely set out "the task" but did not define the scope of the attorney-client relationship. R. 99, Pg. ID 3173. Therefore, according to Jaffe's expert, the email did not establish that Jaffe was representing SSL.

In sum, there was some evidence supporting each camp. But before we can take the question out of the jury's hands and grant judgment as a matter of law for Jaffe, we have to find that "reasonable minds could not differ on any question of material fact." *Betts*, 558 F.3d at 467; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (holding that the standard for directed verdicts "mirrors" the summary judgment standard). This we are unable to do. When there are two reasonable stories about the claimed attorney-client relationship and neither is blatantly contradicted by the record, a genuine dispute about the facts exists. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007). As a result, the jury gets to decide—not the court. And here, the jury did.

Jaffe contends that the jury should not have done so because Cohen and Chaffee only proved that *they* thought SSL had an attorney-client relationship, but attorney-client relationships require *mutual* assent. True enough: one party alone cannot create an attorney-client relationship. *Cf. Fletcher*, 35 N.W.2d at 180. But in every case where the existence of an attorney-client relationship is in dispute, one side will say a relationship existed, while the other side will say it did not. *See, e.g.*, *Tumbleweed Saloon*, 2018 WL 5629640, at *3–4. So the ultimate decision comes down to the fact-finder in evaluating the credibility of the witnesses and the evidence. *Ranney*, 140 N.W. at 946. Here, Chaffee and Cohen's testimony, the email, the expert testimony, the work on common control group liability that necessarily required analysis of other companies,

and Weiss's own statement about his duty of care were enough for the jury to infer an attorney-client relationship.

Although Jaffe counters with cases where courts found no attorney-client relationship, these cases are not on point. For instance, Jaffe cites cases where the party seeking to prove an attorney-client relationship contradicted themselves with their own testimony. *See Scott v. Green*, 364 N.W.2d 709, 717 (Mich. Ct. App. 1985) (Kirwan, J., concurring in part and dissenting in part) ("Plaintiff acknowledged that . . . defendant represented him on a personal, rather than a corporate, basis [only twice], . . . [and] testified that at all other times defendant was the attorney for the corporation . . . not his personal attorney."); *Jackson v. Pollick*, 941 F.2d 1209, at *2 (6th Cir. 1991) (table) (holding that representation did not exist as to a second claim since the plaintiff "admitted" it was limited to one claim). Jaffe's cases also show that courts were skeptical of extending the attorney-client relationship to matters *wholly* unrelated to what that attorney actually worked on. *See, e.g.*, *Ibrahimovic v. Zimmerman*, No. 314139, 2014 WL 2971593, at *3 (Mich. Ct. App. July 1, 2014) (denying representation when there was "no evidence of [the attorney's] having done any work on the case"); *Anderson v. Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, P.C.*, No. 206424, 1999 WL 33434987, at *2 (Mich. Ct. App. Oct. 15, 1999) (denying representation when plaintiffs sought personal retirement advice from their union's counsel). But unlike in these cases, Cohen and Chaffee have consistently maintained that they intended Jaffe to represent SSL, and they requested Weiss's help on a topic that would naturally encompass SSL: common control group liability. Also unlike in Jaffe's cases, the written evidence here supports (or at the very least does not contradict) the existence of an attorney-client relationship. *Cf. Jackson*, 941 F.2d at *2; *Zimmerman*, 2014 WL 2971593, at *3. Chaffee's email could be read to cover Cohen, Chaffee, and their "other assets/companies"—including SSL.

The district court did not err when it denied Jaffe's motion for judgment as a matter of law. With the evidence supporting Cohen and Chaffee's claim, the district court also did not abuse its discretion in denying the motion for a new trial. *See Betts*, 558 F.3d at 467.

III.

The jury found that Cohen and Chaffee collectively suffered $6.3 million in damages. But the jury also found that Cohen and Chaffee failed to mitigate these damages and only awarded them $1.7 million. On cross-appeal, Cohen and Chaffee argue that the district court impermissibly allowed information about a separate lawsuit involving LSI—the distressed company they bought—to come into evidence, and the jury then used this information to award them less damages than they deserved. Cohen and Chaffee allege the district court should have excluded the lawsuit because "its probative value [was] substantially outweighed by the danger of unfair prejudice." *United States v. Boyd*, 640 F.3d 657, 667 (6th Cir. 2011); Fed. R. Evid. 403. We review for abuse of discretion. *Boyd*, 640 F.3d at 667.

In the other lawsuit, two insurance companies claimed that Cohen and Chaffee (and other directors of LSI) had negligently misrepresented LSI's financial information. Over the course of a year, these companies had essentially loaned LSI millions of dollars. But these loans required LSI to hit certain financial goals. The lawsuit alleged that Cohen and Chaffee provided false financial information about LSI to meet these goals and keep getting more loans. In reality, LSI was in far worse shape than they disclosed. Eventually, LSI entered receivership because it could not pay back these loans. Ultimately, the insurance companies' lawsuit settled.

Jaffe sought to introduce evidence of this lawsuit as part of its mitigation case. Jaffe argued that Cohen and Chaffee failed to mitigate their damages by mismanaging LSI and taking out loans that they could not pay back. If Cohen and Chaffee had not sought out these loans, LSI may not

have gone out of business when it did, and the common control group liability would have been less. Thus, Jaffe wanted to argue to the jury that Cohen and Chaffee were responsible for at least some of the damages in this case. After a hearing, the district court allowed Jaffe to introduce the other lawsuit as evidence and then question Cohen and Chaffee about it. Cohen and Chaffee contend that the district court erred in doing so.

The district court has "very broad discretion" when weighing unfair prejudice against probative value, and the court did not abuse that discretion here. *Id.* Cohen and Chaffee only contend that the introduction of the lawsuit itself was the problem. But they do not challenge any information contained *within* that lawsuit. Thus, the vast majority of this financial information would have come in anyway—indeed it did, in thorough questioning of Chaffee by Jaffe's counsel. *See United States v. Warman*, 578 F.3d 320, 348 (6th Cir. 2009) (noting that statements made "were not unduly prejudicial in that they were merely cumulative of the substantial evidence offered at trial"). This is really a question of balancing the probative value and possible unfair prejudice of the fact that two insurance companies accused Cohen and Chaffee of misrepresenting LSI's financial statements. Was the probative value of this evidence *substantially* outweighed by the danger of unfair prejudice? Doubtful, especially given the clear relationship between the lawsuit about LSI's finances and damages based on those finances. *Cf. McLeod v. Parsons Corp.*, 73 F. App'x 846, 854 (6th Cir. 2003) (stating that information about other lawsuits would have been probative (and possibly admissible) had there been a "clear nexus between these lawsuits and this case"). And how LSI's lenders independently viewed those finances was probative of Jaffe's mitigation theory: LSI was in bad financial shape partially because of Cohen and Chaffee's management decisions. *Cf. Brewer v. Jones*, 222 F. App'x 69, 70 (2d Cir. 2007) (holding that the district court did not abuse its discretion "because the evidence [of the lawsuits] was relevant to

show a possible cause of [plaintiff]'s injury unrelated to the acts of the defendant"). As a result, the lawsuit had at least some probative value and only questionable prejudicial effect when viewed in light of the other financial evidence in the record suggesting mismanagement at LSI, so admitting it was within the district court's discretion. *Cf. Soden v. Freightliner Corp.*, 714 F.2d 498, 509 (5th Cir. 1983) ("[A]lthough the use of unsupported allegations in prior lawsuits . . . may not have been of the strongest probative value, neither was the lack of support particularly prejudicial."). In any event, if we had some doubts, they would not rise to a "definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Heavrin*, 330 F.3d 723, 727 (6th Cir. 2003) (citation omitted) (articulating abuse of discretion standard).

\* \* \*

Sufficient evidence supported the jury's verdict that an attorney-client relationship existed between Jaffe and SSL, and the district court did not abuse its discretion by admitting into evidence information about the lawsuit against Cohen and Chaffee.

We affirm.